IRA SANDERS *v.* BLUE RIDGE GLASS CORPORATION.

(*Knoxville,* September Term, 1930.)

Opinion filed November 28, 1930.

536

JOHN R. TODD, JR., R. B. DADE and ROBERT BURROW, for complainant, appellee.

KELLY & PENN and DODSON & FERGUSON, for defendant, appellant.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

Ira Sanders is claimant for compensation from his employer. The chancellor decreed that he is entitled to compensation as for a permanent partial disability. On his appeal in error Sanders contends that his disability is both permanent and total, and that compensation should be awarded accordingly.

The employer prosecutes its appeal in error, to reverse the finding of the chancellor that the disability suffered by Sanders is the proximate result of an accidental injury arising out of and in the course of his employment. It is contended that there is no evidence to support this finding.

At the time of the accident which is the basis of the claim, January 14, 1930, Sanders had been in the employ of the defendant five months. He had performed manual labor of a general nature, without inconvenience or pain. On the date named, he was engaged in unloading some blocks of metal, weighing several hundred pounds, from a freight car to a platform, using an ordinary two-wheel hand truck for the purpose. The wheels of the truck struck a small obstruction, causing the body of the truck to pitch forward and upward. One of the truck handles struck the left side of Sanders, under his arm. By "straining himself" Sanders succeeded in bringing the truck back to level, having been instructed "not to break the block."

Sanders described the immediate effects of the blow on his side and strain as including dizziness, difficulty in breathing, and pain through his chest and in the region of his heart. After a short halt, he continued his work

during the afternoon, and then called on two doctors without finding either in his office. His pain and discomfort continued during the night, and on the next day he went to his work but was unable to do much. On that evening he consulted Dr. Keener.

The chancellor accredited the testimony of Sanders, describing the accident, blow, strain, and immediate effects; and his finding thereon is conclusive on appeal. *Milne* v. *Sanders,* 143 Tenn., 602.

The chancellor found further that, as a result of the injury thus sustained by Sanders, a preexisting heart trouble was aggravated, disabling him from thereafter performing anything except "light work, not attended with unusual exertion or hard work."

Dr Keener, who examined Sanders on the second day after he was hurt, testified that he then found Sanders had a "very much enlarged heart and leaking valve," and that he was then permanently and totally disabled "so far as any hard work or manual labor is concerned."

Doctors Reed and Tipton testified for the defendant that in May, 1929, seven or eight months before the accident, they examined Sanders to determine his fitness for employment by another employer of labor in Kingsport, and that they then found and reported that Sanders had a defective valve in his heart, which they considered would render it dangerous for him to do heavy work; on account of which his application for employment was rejected.

The chancellor appears to have accepted so much of the testimony of these doctors; and the issue on the employer's appeal is whether there is any material evidence to sustain the chancellor's finding that the condition reported by Doctors Reed and Tipton in May,

1929, was augmented and aggravated by the blow and strain suffered by Sanders in January, so as to cause the disability existing after that date.

Doctors Reed and Tipton again examined Sanders, after his accident, in the latter part of February, and testified that his heart condition was "some better," and "in better condition" than it was when they examined him in 1929; that the principal change was an increased blood pressure, which indicated to them that the muscles of the heart had grown stronger and were better able to overcome the ill effects of the leaky valve. Dr. Reed testified: "He is more able to work now than he was then, from the records of the examination." Dr. Tipton testified to the same effect.

This testimony of Doctors Reed and Tipton is in direct opposition to other evidence; and it was necessary for the chancellor to make a choice. He evidently rejected it in favor of the undisputed testimony that Sanders worked without pain or distress for five months after the first examination, and that his ability to work was suddenly and abruptly terminated upon sustaining a blow over his heart, and a severe strain, following which he was wholly unable to do any heavy work, not only according to the testimony of himself and his wife but supported by the testimony of Dr. Keener, above referred to. The conflict may be likened to the traditional conflict between theory and practice, in which the latter so often demonstrates the error of the former.

Dr. Keener was asked "if any kind of serious blow or lick would tend to cause the trouble you find now with his heart?" He replied: "I do not think that would cause a normal heart to, but it would probably make an abnormal heart worse." Again he testified that a blow

or lick "might have a tendency to increase the leakage of the heart; it might increase that." This is expert testimony sustaining the opinion or finding of the chancellor that the injury aggravated the already abnormal condition of petitioner's heart.

Counsel for the employer depreciate the value of Dr. Keener's testimony because on cross-examination he was asked whether the "heart condition he found could have been brought about by traumatism," and replied: "It's not likely to be." Counsel say: "He nowhere states that petitioner's heart condition is due in whole or in part to the alleged blow. He does state the perfectly obvious fact that a severe blow might make an abnormal heart worse."

In making this contention and admission, coun sel overlook the real nature and purpose of expert testi mony. Physicians are not substituted for the court in the determination of the cause of the petitioner's disability, in a case of this character. The rule is that "where the cause of an existing condition or injury is in dispute, and where the jury must determine which of the causes urged by the respective parties is the right one, an expert's opinion may be admitted to the effect that a certain cause could or might produce the condition; but to permit him to testify as to what in his opinion probably did it would be to supplant the jury by the witness." *Cumberland Tel. & Tel. Co.* v. *Peacher Mill Co.*, 129 Tenn., 374, 381-382, 164 S. W., 1145; L. R. A., 1915A, 1045. Dr. Keener's testimony, both on original and cross-examination, conceded that the blow and strain described by the petitioner could have aggravated his already abnormal heart; and giving due weight to this opinion of the physician the question of whether this relation of

cause and effect existed in fact was the question for the chancellor to determine.

During the cross-examination of Dr. Reed it developed that he had made a written report of his findings on his examination of Sanders after the accident. When this report was produced, it contained the statement that "on inspection of the cardiac area there was evident a diffuse impact of the apex (of the heart) against the chest wall." Dr. Reed testified that such a condition could be caused by a blow or strain, but protested that it was not caused in that way in the case of Sanders, because the condition was present on his first examination in 1929. The chancellor made particular reference to this evidence as supporting petitioner's claim, and this action is strongly criticised by counsel for the employer, who insist that the chancellor overlooked the statement of the doctor that the same condition was present before the accident.

We do not think the chancellor overlooked this statement of the doctor. The record abundantly warrants its rejection. Dr. Reed's testimony throughout is that of a partisan witness; partisan, not in the sense that he desired to unduly favor the employer, but in the sense that he appeared too anxious to sustain his own professional opinion. He persistently evaded questions on cross-examination, and at no point in his testimony did he disclose the existence of the condition described in his report to the employer until the report was produced on his cross-examination. He made no record of this condition on his report prepared at the time he first examined Sanders, and refers to nothing which would enable him to particularly recall the fact omitted from his first report. His assistant, Dr. Tipton, followed him

on the witness stand, and was not asked to state the facts on this point, although he participated in both examinations. Furthermore, it is suggested in the testimony that this condition was revealed by the fluoroscopic examination made by Dr. Reed after the accident, and it does not appear that the fluoroscope was used on the previous examination.

We construe the decree of the chancellor as finding that Dr. Reed was mistaken in his recollection that the condition described in his report of the second examination was present when he first examined petitioner, and we think this finding was warranted. *Frank* v. *Wright*, 140 Tenn., 535.

We conclude that there is material support on the record for the chancellor's finding that the petitioner's disability resulted from an aggravation and increase of his heart disorder, caused by an accidental injury arising out of and in the course of his employment; on account of which an award of compensation was proper.

Compensation is properly awarded for disability resulting from the aggravation of a preexisting disorder by an accidental injury. *Tennessee Eastman Corp.* v. *Russell*, 150 Tenn., 331; *Re Madden*, 222 Mass., 487, 111 N. E., 379, L. R. A., 1916D, 1000; Annotation, 19 A. L. R., 110, *et seq.*; 60 A. L. R., 1299. For analogy in negligence cases, see *Elrod* v. *Town of Franklin*, 140 Tenn., 228.

The testimony of Dr. Keener that the petitioner "might do light work" is some evidence to support the chancellor's finding that petitioner's disability, while permanent, is only partial and not total; and the assignment of error of the petitioner, attacking this finding, must be overruled. Any "injury which totally incapaci-

tates the employe from working at an occupation which brings him an income" constitutes total disability. Acts 1919, chapter 123, section 28, subsection (e). There is no evidence in the record that employment of the character suited to petitioner's condition was not available. And the burden is upon him to prove the extent of his disability.

The chancellor decreed that the petitioner should recover compensation at the rate of "one-half his average wage at the time of the accident," for three hundred weeks, "or until his recovery or time he is able to work."

The employer assigns as error that there is no evidence in the record upon which the amount of compensation can properly be computed.

The Compensation Act, 1919, chapter 123, section 28, subsection (c), provides that the compensation to be awarded for a permanent partial disability shall be one-half "the difference between the wage of the workman at the time of the injury and the wage he is able to earn in his partially disabled condition," payable during disability but not to exceed three hundred weeks.

Obviously, this test cannot be applied to a particular case, unless some evidence is offered by which the court can determine what wages the partially disabled workman can earn. *Russell* v. *Big Mountain Collieries,* 156 Tenn., 193.

There is no evidence in the record before us by which we can determine whether the petitioner could have earned wages in employment not involving heavy labor, at any time between the date of his injury and the trial, in view of the findings of the chancellor. It is true that the petitioner testified that he had not been able to work at all, but the chancellor rejected that statement in favor

of Dr. Keener's testimony that "he might do light work." There is no evidence as to whether employment which the petitioner could perform was available. The decree of the chancellor is itself inconsistent in that it finds the petitioner "is able to perform light work, not attended with unusual exertion or hard work," and then directs the recovery of compensation in the maximum amount "until his recovery or time he is able to work."

Having found that the petitioner was able to perform light work, the chancellor should have required evidence as to whether this partial ability to work possessed any wage-earning value, before fixing the amount of the weekly payments of compensation under subsection (c) of section 28 of the statute. In the absence of such evidence we feel ourselves wholly unable to do substantial justice to the parties in reviewing the chancellor's award.

The decree of this court will affirm the decree of the chancellor in so far as it adjudges that the petitioner has sustained permanent partial disability from accidental injury, arising out of and in the course of his employment, on account of which he is entitled to compensation from the defendant from the date of his injury, January 14, 1930, for a period of three hundred weeks, unless he should sooner recover from his disability; but the decree fixing the amount of the weekly payments will be reversed, and the cause remanded for further evidence as to the wage-earning value of petitioner's partial ability to work, upon which, together with the evidence now preserved in the trial court by bill of exceptions, the chancellor will render his decree fixing the amount of compensation to which the petitioner is entitled, in the measure prescribed by the Compensation Act, section 28, subsection (c). Costs of the appeal will be paid by the employer.