GOODALL COMPANY v. SARTIN
(two cases).

Nos. 9431, 9432.

Circuit Court of Appeals, Sixth Circuit.

Feb. 15, 1944.

Thomas G. McConnell, of Knoxville, Tenn. (W. Cecil Anderson and Frantz, McConnell & Seymour, all of Knoxville, Tenn., on the brief), for appellant.

James G. Johnson, of Knoxville, Tenn. (James W. K. Johnson, and Johnson & Johnson, both of Knoxville, Tenn., on the brief), for appellees.

Before HAMILTON, MARTIN, and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

The Goodall Company has appealed from judgments entered on the verdicts of a jury for $2,000 damages awarded Ruby E. Sartin for personal injuries and $500 damages awarded her husband, William Sartin, for loss of her services and consortium. Appellant avers that the District Court erroneously declined to grant its motion for directed verdicts made upon the conclusion of the introduction of evidence by appellees in the two cases, which were tried together, and erroneously declined to grant the same motion renewed when all the evidence had been received.

Pursuant to Civil Procedure Rule 50(b), 28 U.S.C.A. following section 723c, appellant moved the district court to set aside the verdicts and judgments thereon, and to enter judgments in accordance with the motions for directed verdicts made at the trial; and also filed separate motions for new trials.

In overruling the motions for new trial and for judgments non obstante veredicto, the District Judge filed a memorandum in which he stated:

"There was a jury verdict for plaintiffs, and the motion questions the sufficiency of the evidence, which was conflicting. There is evidence to support the verdict, and I do not feel warranted in setting it aside.

"The motion raises also the question whether the action is barred by the statute of limitations. That question was earlier presented and considered and has again received consideration. I do not believe the defendant's contention is meritorious.

"Objections to rulings on evidence are not, in my opinion, meritorious."

The same propositions pressed upon the District Judge are now urged on appeal. No contention is made here that the trial court ruled erroneously on the admissibility of evidence; or erred in its instructions to the jury.

The declarations of appellees predicated the liability of appellant upon its noncompliance with Sections 5339 and 5340 of the Tennessee Code of 1932.[1]

It was declared that appellant had failed to provide and use in that part of its factory where the appellee Mrs. Sartin was required to work sufficient exhaust fans, blowers, pipes, hoods, receptacles and conveyors, or other mechanical means for collecting and carrying off dust, filaments, devitalized air, injurious gases, or other impurities detrimental to the health of those in or about the premises. The charge was made that appellant had "negligently failed to provide sufficient fans, blowers, pipes and hoods properly fitted and adjusted, and of sufficient power and dimensions to effectually prevent the dust, filaments or injurious gases produced or generated by said machines, contrivances or apparatus from escaping into the at-

---

[1] "Sec. 5339. Ventilation required where five or more persons are employed.—Every factory, workshop, association, or other establishment in which five or more persons are employed shall be so ventilated while work is carried on therein that the air shall not become so exhausted as to become injurious to the health of the persons employed therein, and as to render harmless, as far as practicable, all gases, vapors, dust, or other impurities generated in the course of the manufacturing process or handicraft carried on therein.

"Sec. 5340. What to be used to protect employees against dust, filaments, or injurious gases.—Every factory, workshop, association, or other establishment where a work or process is carried on by which dust, filaments, or injurious gases are produced or generated, that are liable to be inhaled by persons employed therein, the person by whose authority the said work or process is carried on shall cause to be provided and used, in said workshop, factory, association, or establishment, exhaust fans, conveyors, receptacles, or blowers with pipes and hoods extending therefrom to each machine, contrivance or apparatus by which dust, filaments, or injurious gases are produced or generated; or provide other mechanical means to be maintained for the purpose of carrying off or receiving and collecting such dust, filament, devitalized air, or other impurities as may be detrimental to the health of those in or about, or in connection with, such place as herein mentioned. Provided, that if natural ventilation sufficient to exclude the harmful elements above enumerated be provided, the requirements of this section shall have been complied with by such firm, corporation, association or other establishment as herein mentioned. Said fans, blowers, pipes and hoods shall be properly fitted and adjusted and of power and dimensions sufficient to effectually prevent the dust, filaments, or injurious gases produced or generated by said machines, contrivances, or apparatus from escaping into the atmosphere of the room or rooms of said factory, workshop, or other establishment, where persons are employed."

mosphere of the room" where Mrs. Sartin worked.

The declaration averred that in consequence of the negligence of appellant in the particulars enumerated, the air in the room where Mrs. Sartin and many others worked became impure, foul and filled with dust, filaments and gases, which she was compelled to breathe, with resultant permanent impairment of her health.

It was alleged that in the manufacture of clothing and garments, appellant crowded several hundred employees into one large room, where Mrs. Sartin was assigned the duty of making, fitting and sewing, by machine, pockets and parts of clothing; and that she was furnished materials "of a loosely woven texture and cheap construction which the defendant had filled with starch and other materials for the purpose of giving said clothing and parts a firm and lasting appearance."

The use of many machines was required in this work, and large quantities of dust, filaments, gases and chemical materials were charged to have been generated, thereby polluting the air which Mrs. Sartin and other employees in the room were compelled to breathe.

Further averments were that, in consequence of breathing the impure air which appellant's negligent violation of law had caused her to breathe, Mrs. Sartin "became sick, sore and disabled in and about her nose and nasal passages, throat, throat passages and lungs, and the inner parts of her body generally, to such an extent that on many occasions she was caused to cough and bleed at the nose and to endure a severe and painful inflammation of her nasal passages, throat and lungs, and to become so disabled thereby that on the 27th day of February, 1940, such injuries had advanced to such an extent that a permanent illness and disability of her lungs resulted"; and that, upon advice of appellant's nurse, she was committed to the care of a specialist in lung, throat and nose diseases, in an attempt to stay the progress of her injuries.

In trial amendments to the declarations in the two cases, it was stated that if Mrs. Sartin "had a pre-existing disorder or disease of her lungs, nasal passages or throat," the same "was caused to be extended or increased to such an extent" that she was compelled to sever her employment with appellant; and that the injuries inflicted upon her by appellant had "short-ened her life" and would prevent her from ever again engaging in any profitable employment.

It should be observed that no specific allegation is made in the declarations that Mrs. Sartin contracted tuberculosis, although proof to that effect was adduced at the trial. Under appellees' averments, damages for impairment of Mrs. Sartin's health, if caused by appellant's negligence, would be recoverable to the extent of the resultant proximate injury shown. Even though the proof fell short of showing that appellant's negligence proximately caused Mrs. Sartin's tuberculosis, the jury could properly award her damages for such personal injury and physical pain, with concomitant mental suffering, as was in their judgment, on the evidence adduced, proximately caused by appellant's negligence in failing to observe the statutory requirements.

The appellee Mrs. Sartin testified that, when sewing on boys' pants pockets, which were made of a starchy material, "starch would fly from the cloth" and would settle on her dress and clothing, in her hair, and in the folds of her flesh. When she worked as long as an hour with that material, she would have a burning sensation in her nose, and if she continued the same kind of work for three or four hours her nose would bleed. She said that there was "a film of that starch" over the machines, the electric fans and "everything" when she and her co-employees worked on boys' trousers.

She was employed by appellant in October, 1933, and six or eight months thereafter began working with the starchy material. Her health was perfect at the time and she had never had a serious illness in her life. She was 38 years of age at the time of the trial. After starting upon the work of sewing on starched pockets to boys' trousers, she began to feel irritation in her throat and nose; and, when not so engaged, she was not troubled with "that dryness and nose bleeding". From time to time, she went into the adjacent office of the trained nurse, furnished by her employer, to have drops put into her nose and eyes and to receive "little green lozenges for the throat to relieve the dry irritated feeling". As she worked increasingly on boys' trousers, which she did up to the time of her discharge, her nose and throat irritation became steadily worse. She testified that the appellant company

sent her "to the chest clinic for tuberculosis"; and that following her examination there, the trained nurse employed by the company told her over the telephone that the doctor had reported a spot on her lung, and that she could not come back to work. She has not worked anywhere since her discharge by the appellant.

Mrs. Sartin related further that she goes to a free clinic regularly; that X-ray pictures of her lungs have been taken repeatedly; and that she has done her best to follow the doctor's orders. She is compelled to rest four hours each day, performs only light household duties, and had become weaker during the year preceding the trial.

As to conditions at appellant's plant, Mrs. Sartin testified that in the large room where she and many other persons worked, there were no mechanical devices to take off filaments and foul air; and that there were only ordinary electric revolving fans, which merely stirred and cooled the air. She narrated further that most of the work on boys' pants was done in winter and that, during that season, she suffered a "smothering feeling" upon entering the work room, because of the lack of fresh air; that all who worked on boys' pants were grouped close together; and that the windows of the work room were not kept open sufficiently to afford much ventilation. According to her testimony, the room faced a city street on the north, ran parallel with a railroad on the east, had a gas factory some distance back of it on the south; and on the west was bounded by a solid brick wall.

Asked whether any complaint by employees concerning the poor ventilation of the room had been made, Mrs. Sartin answered that complaints of lack of fresh air in the winter had been constantly made to the trained nurse and to the department superintendent, who "promised to do something about it", but that "there was never anything done" up to the time she left.

Miss Ethel Stooksbury, who had worked with Mrs. Sartin during the full period of appellee's employment, gave testimony that she, too, worked on boys' pants pockets in the same manner as did Mrs. Sartin; that all employees engaged in similar work were grouped quite close together, with "just room enough to work each one"; that she had been compelled many times to remove the foot feed from her sewing machine to take out the starch, much of which constantly accumulated on the machine; that she had trouble with her breathing, and had a sore nose and throat all the time she worked there; that her nose would bleed; and that she finally quit work in February, 1940. She testified that probably 250 persons worked in the room, some forty of whom used sewing machines on boys' pants pockets. She stated that the employees placed on their sewing machines small fans, which they themselves had purchased at drug stores; that the company had put fans on posts, but that these were supplied with no suction pipes or anything of the sort to draw air from the outside into the room or to expel air from the work room. According to her testimony, no mechanical device of any kind had been furnished by the company to ventilate the room with outside air.

Dr. Armstrong, who was Mrs. Sartin's family physician, testified that, upon the basis of clinical reports, his cursory observation of her and what she had told him concerning her health, Mrs. Sartin, at the time of the termination of her employment at the plant of appellant, was affected with pulmonary tuberculosis.

In response to a hypothetical question whether, assuming the facts which have been heretofore related, the employment of Mrs. Sartin under the conditions described "could or might have caused" her lung condition, the physician replied that it is possible for any foreign substance to aggravate the condition but not to produce tuberculosis, unless its organism is already present in the lung.

Appellees introduced as an expert medical witness, Dr. Hodge, who stated that he had made a thorough examination of Mrs. Sartin less than three weeks before the trial; had made an X-ray picture of her lungs and had examined other X-ray pictures from the clinic; and was of the opinion that she was then suffering from active pulmonary tuberculosis. Dr. Hodge, in response to a hypothetical question, similar to that propounded to Dr. Armstrong, expressed the opinion that the condition described as existing in the factory would not, of itself, cause tuberculosis, which is a germ disease; but would be debilitating, would irritate bronchial tubes and "make the patient more prone to develop the disease."

Dr. Hodge was recalled to the witness stand in rebuttal and asked a hypothetical

question, incorporating a description of the chemical content of the cloth used in the work performed by Mrs. Sartin. He was asked whether, assuming the hypothetical facts, including the content of the cloth material, he could state with reasonable certainty that the employment of Mrs. Sartin, under the conditions described, "could or might have caused" her lung condition. He replied that, as he understood, the question asked was whether in his opinion the employment as described could cause "the condition from which this patient is actually suffering". His opinion was that the dust, containing irritating substances in the material would not, of itself, produce tuberculosis, which is primarily caused by tubercular bacilli, but that the irritating dust "would be a strong predisposing factor in the case". He added that in his opinion the dust was deleterious and would affect the patient adversely, naturally making tubercular infection more probable than it would have been had the deleterious dust condition not existed.

The appellee, William A. Sartin, corroborated his wife's testimony as to her rest habits; stated that he mopped, swept, brought in coal and kindling, and worked around the house; and that a colored girl was hired to do the washing and ironing. Miss Kelly, an employee of the Tuberculosis Clinic of the City of Knoxville, identified the X-ray exhibits.

No other witnesses were called by appellees.

The appellant moved for directed verdicts, and the motions were overruled; whereupon appellant put on its proof. It is unnecessary to elaborate the testimony of the witnesses placed on the stand by appellant, inasmuch as we are here concerned, not with the preponderance of evidence, but merely with whether there was substantial evidence to support the verdicts of the jury and the judgments entered thereon. Salient points in the testimony of appellant's witnesses should be noted, however.

Mohr, superintendent of its pants shop, stated that the dimensions of the work room were 220 feet by 109 feet and that the height of the room was 14½ feet; that there were 16 windows both on the north and on the south side, and 30 on the east side of the room; that the west side was a solid brick wall; and that there were 90 fans in the room, of which 10 or 11 were large ceiling fans with 24 inch blades. He said that 49 sixteen-inch-blade fans were along the walls and on the posts; and that a thirty-six-inch-blade fan was placed in the northwest corner of the room. He stated further that the number of employees who worked in the pants shop ranged from 365 to 395, and that approximately 285 Singer sewing machines were kept running in that shop. The witness was asked whether there was anything in the plant while Mrs. Sartin worked there, from October, 1933, to February, 1940, to "suck the impurities", if there were any, "out of that plant and carry them to the outside". He replied that there was not.

Harper and Mathis, State Factory Inspectors, each in turn, had at long intervals officially inspected appellant's plant and reported its ventilation "good". Their inspections, obviously, were quick and cursory. The only two inspections by Harper were more than a year apart, and the only two by Mathis were nearly two years and ten months apart. None of the inspections consumed more time than an hour and a half. The recollection of each inspector was limited largely to the contents of signed reports. Harper's inspection of conditions as to ventilation was practically confined to looking around, and that of Mathis to looking and smelling.

A professor of mechanical engineering and two professors of chemistry were introduced as expert witnesses by the appellant to the objective, sought to be shown, that air breathed by Mrs. Sartin in its plant was within health range as to quantity and content, and had not in their opinion been injurious to her health. The jury, as it was privileged to do, evidently rejected the opinions of these men of science reached from experiments and theoretical calculations.

Appellant presented three expert medical witnesses: Dr. Nave, who had specialized in the diagnosis and treatment of tuberculosis for more than seventeen years; Dr. Acuff, former president of the Tennessee Tuberculosis Association and a founder of the tuberculosis sanitarium near Knoxville; and Dr. Abercrombie, an X-ray specialist in that sanitarium.

Dr. Nave, who first examined Mrs. Sartin on February 9, 1940, testified that the personal history given him by the patient revealed no fatigue, hoarseness, cough, shortness of breath, pain in the chest,

night sweats, loss of weight, or fever; that she weighed 104 pounds and her temperature and pulse were normal; that, in the case history of her contact with tuberculosis, the record showed that she had worked near Mrs. Whittier. Additional case history of contact, as related by the doctor, was that Mrs. Sartin's mother had been his patient at the Beverly Hills Sanitarium. His tentative diagnosis was "suspicious" and specified "contact only." On her next visit to him, on February 23rd of the same year, there was still no indication of chest pathology; but, in the meantime, he had received Dr. Abercrombie's report of his X-ray findings, which showed "early active minimal tuberculosis of the right apex". His subsequent examinations of the lady on March 25, 1940, again failed to reveal any abnormality in her chest; and he reported the case only as "very suspicious—X-ray—contact". Later physical examinations by him on April 22, May 20, June 17, July 15, August 26, October 7 and December 9, 1940; on February 17, July 14 and October 13, 1941; and on January 12, 1942, revealed no definite abnormal physical findings; and his diagnosis was substantially the same as it had been on the occasion of her first visit to him on February 9, 1940. He stated that, on his own findings, he had never been able to make a definite diagnosis of tuberculosis.

Dr. Acuff had, at the request of appellant, examined Mrs. Sartin shortly before the trial, for the purpose of testifying in its behalf. His examination of her chest revealed no evidence of rales or cavities; and, independently of the X-ray pictures, there was no showing of tuberculosis. She had never had "positive sputum, temperature or clinical findings". But he admitted that her temperature was 99 at the time he examined her around noon. He expressed the opinion that, if Mrs. Sartin had ever had tuberculosis, the disease appeared to be healed at the time he examined her. The only contacts with tuberculosis which Mrs. Sartin related to him were occasional visits to her tubercular mother, for approximately thirty minutes to an hour or two each time, on an average of ten days to two weeks; and working for some three years beside Mrs. Whittier, who had been sent to Beverly Hills Sanitarium for treatment. He said that he had never been fully convinced that Mrs. Sartin had at the present time, or that she had ever had, tuberculosis.

Dr. Abercrombie testified that the X-ray pictures definitely revealed tuberculosis in early, active minimal stages; and that the same condition was revealed in the earlier pictures as was shown in the last one, made on January 12, 1942. He found no evidence in the X-ray pictures that the injury to Mrs. Sartin's lung resulted from breathing dust.

In her testimony, Miss Terry, the trained nurse employed by the appellant company, remembered that Mrs. Sartin had come to her first-aid room a few times, but could not recall "what she came for". The witness admitted that in winter the girls near the windows of the work room complained if the windows were opened too wide, and that consequently the windows were regulated in an effort to satisfy those employees, as well as those who worked in the center of the shop.

The principle is so well established as to require no citation of authority that, upon the motion of a defendant for a directed verdict, the trial court should overrule the motion, unless, viewing the evidence in the light most favorable to the plaintiff, there would be no substantial evidence to support a jury verdict if returned for the plaintiff. Applying this test, the District Court in the instant case unquestionably properly submitted to the jury the issue of the negligence of appellant and its violation of the factory ventilation statutes of Tennessee, Sections 5339 and 5340, Code of 1932.

The most strenuous argument of appellant is that the starch dust breathed by Mrs. Sartin while employed in its plant was harmless and did not injure her nose, throat, or lungs; and that there is no substantial evidence in the record that she developed tuberculosis from breathing the starch dust. It is contended that the testimony of her expert witnesses is no more than a speculative expression of opinion that breathing the starch dust "might or could" have produced her tubercular condition, by lowering her vitality and weakening her resistance to that germ disease, and that the evidence shows that the real cause of her affliction was contact with her mother and with Mrs. Whittier.

Appellant contends that Mayor and City Council of Nashville v. Reese, 138 Tenn. 471, 480, 486, 197 S.W. 492, 494, L.R.A. 1918B, 349, directly supports its argument that there can be no recovery under the facts presented by this record. The cited

case is distinguishable from that at bar, in that, in the former, the plaintiff who had received traumatic injuries causing kidney trouble, died many months later of pneumonia, which the uncontroverted proof showed was not of traumatic origin but due to the presence of the pneumococcus germ. The Supreme Court of Tennessee stated that "all witnesses, lay and professional, agree in saying that he died, not from kidney or bladder trouble, but from the attack of pneumonia." The court could not [page 486 of 138 Tenn., page 495 of 197 S.W.] "assent to the proposition that, where a person has received an injury many months before, and afterwards dies of a germ disease, in no wise connected with such injury, a cause of action arises against the wrongdoer on the theory that by reason of such injuries the victim's constitution became weakened and thereby rendered him an easy prey to such disease." It was stated, however, that "each case of this kind must stand upon its own facts."

In the instant case, appellee Mrs. Sartin constantly breathed the deleterious starch dust, from 1933 until she was discharged by appellant on February 27, 1940. On the record before us it would be unjustifiable to say that her diseased condition at that time was "in no wise connected with" the injury inflicted upon her in consequence of appellant's negligence and violation of law.

In its reply brief, appellant placed emphasis upon an unreported opinion of the Supreme Court of Tennessee, in Brooks Sand & Gravel Company, Inc. v. Bond,[1] decided November 7, 1942. In that case, the plaintiff had recovered a judgment on the verdict of a jury for damages for personal injuries, resultant from the failure of the defendant to comply with Sections 5339 and 5340 of the 1932 Tennessee Code. The State Supreme Court reversed the judgment and dismissed the case, upon the ground that, under the medical testimony in the record, it would be "impossible to say that any failure of the defendant to observe the Factory Inspection Act, rather than other causes, occasioned or aggravated the plaintiff's disease", which was tuberculosis. It was stated that there was no substantial evidence that the activity of the plaintiff's disease was produced by his working conditions, and that any such conclusion would be a guess on the part of the doctors, and consequently a guess by the jury.

The Tennessee Supreme Court, however, adhered to the doctrine of Elrod v. Town of Franklin, 140 Tenn. 228, 240, 204 S.W. 298, and said that "in tort cases of this nature it is true that one of weak physical structure or in ill health is as much entitled to protection as an athlete, and in either case the physical injury which is actually caused by the tort, whether one be strong or weak, is the natural consequence of the wrong."

The plaintiff had introduced two expert medical witnesses, one of whom said that he could not swear that the dust breathed by the plaintiff had caused the lesion in his lung, but on the contrary the doctor had found nothing in the X-ray pictures to indicate the "effect of dust." He said, moreover, that the symptoms of plaintiff, as detailed to him hypothetically, were not distinctively referable to plaintiff's work; that it would be impossible to tell when the germs in the lungs of the plaintiff became active; and that the plaintiff would have shown the same symptoms when his tubercular germs became active, whether he was working in that place or not.

The other doctor called by the plaintiff expressed the opinion that it would be a "pure guess" to say whether the dust in which plaintiff worked or "something else" caused his tubercular germs to "flare up".

Thus, it appears that the testimony of the plaintiff's own medical witnesses did not support his charge that the cement dust breathed by him had caused his tuberculosis.

While, on quick reading, Brooks Sand & Gravel Company, Inc. v. Bond, supra, might seem to support appellant's contention that its motion for a directed verdict should have been granted, that authority is, upon careful analysis, distinguishable upon its facts, as appears from the preceding narrative of the evidence in the case at bar. Comparison of the facts of one case with those of another is much like comparing finger prints under the Bertillon System. Always, there are distinguishing whorls, or other differentiating marks. Each case must be decided upon its own facts, by the application of appropriate principles of law. No compulsion, therefore, rests upon this court under the accepted doctrine of Erie Railroad Com-

[1] No opinion for publication.

pany v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, to reverse the judgment of the District Court upon the authority of the Tennessee case, which is recognized as binding, inasmuch as we find it distinguishable from the case at bar.

■ Our own decisions are in accord with those of the Supreme Court of Tennessee, in denying to juries the right to decide cases by merely weighing probabilities and speculating upon the greater probability. The rights of litigants are not to be determined by mere conjecture or guess. See Virginia & S. W. R. Co. v. Hawk, 6 Cir., 160 F. 348, 352. Compare Buckeye Cotton Oil Co. v. Campagna, 146 Tenn. 389, 242 S.W. 646; Hart v. Union City, 107 Tenn. 294, 64 S.W. 6; McBrayer v. Dixie Merc. Co., 178 Tenn. 135, 145, 156 S.W.2d 408; Louisville & Nashville R. R. Co. v. Dillehay, 3 Tenn.App. 476, 482. This doctrine is general law. See May Department Stores Co. v. Bell, 8 Cir., 61 F.2d 830.

■ But it is also true that, no error of law appearing, the judgment of a District Court on the verdict of a jury, based on substantial supporting evidence, will not be set aside on appeal.

In Sanders v. Blue Ridge Glass Corporation, 161 Tenn. 535, 33 S.W.2d 84, it was held that the finding of the trial court, accrediting the testimony of an injured employee describing his accident and its immediate effects, is conclusive on appeal.

The Court of Appeals of Tennessee, in Tennessee Eastman Corporation v. Newman, 22 Tenn.App. 270, 121 S.W.2d 130, affirmed a judgment for the plaintiff on the verdict of a jury, in a personal injury action, and held that, under conflicting evidence, the question was for the jury whether an employee's disability was the result of an industrial disease contracted in the course of his employment while unloading soda ash from railway cars, or resulted from infected tonsils, pyorrhea and other natural causes, for which his employer would not be liable under Sections 5339 and 5340 of the Tennessee Code of 1932, requiring exhaust fans or similar apparatus to be used for the protection of employees against dust filaments, or injurious gases.

The Supreme Court of Tennessee declared, in Elrod v. Town of Franklin, 140 Tenn. 228, 241, 204 S.W. 298, 301, that if "afflictions which plaintiff had before the fall [which was caused by the negligence of the municipality] did not cause her pain and suffering, as she said they did not, but after the fall they did cause pain and suffering, the fall is the proximate cause of the injuries sustained."

In Sanders v. Blue Ridge Glass Corporation, 161 Tenn. 535, 543, 33 S.W.2d 84, supra, it was held that compensation is properly awarded for disability resulting from the aggravation of a pre-existing disorder by an accidental injury. Compare Tennessee Eastman Corporation v. Russell, 150 Tenn. 331, 334, 265 S.W. 540.

National Life & Accident Ins. Co. v. Follett, 168 Tenn. 647, 80 S.W.2d 92, is not authority for rejecting the opinion testimony of the two doctors introduced by appellees as valueless, because qualified by expressions that hypothetical conditions "might" or "could" have been the causation of Mrs. Sartin's injury. Adherence to the "might" or "could" formula, long followed by the legal profession in Tennessee, in consonance with Cumberland Telephone & Telegraph Co. v. Peacher Mill Co., 129 Tenn. 374, 164 S.W. 1145, L.R.A.1915A, 1045, Sanders v. Blue Ridge Glass Corporation, supra, and other Tennessee cases, was deemed unnecessary in the introduction of opinion testimony of expert witnesses. The opinion merely made it clear that attorneys were not to be so restricted.

Chief Justice Green said [168 Tenn. 647, 80 S.W.2d 97]: "If it is necessary for a jury to have the advice and opinion of an expert witness in order to draw a proper conclusion from certain facts, a definite and positive expression from such a witness would be much more helpful to the jury than a qualified expression. The opinion is not to be received at all upon an ultimate issue of fact, if the jury is qualified to pass upon such an issue. However the opinion be phrased or formulated, it remains an opinion, which the jury is at liberty to reject."

The appellant asserts earnestly that the cases should be dismissed, for the reason that the evidence is said to establish that Mrs. Sartin contracted tuberculosis on or before February 9, 1940, and that the causes of action are barred by the one-year statute of limitation, Section 8595, Tennessee Code of 1932, inasmuch as the suits were not brought until February 15, 1941. In our judgment, the argument is unsound.

True it is, the statute of limitations runs against a cause of action from the time of the original injury and not from the date of ensuant damage. Albert v. Sherman, 167 Tenn. 133, 138, 67 S.W. 2d 140. Compare Franse v. Knox Porcelain Corporation, 171 Tenn. 49, 100 S.W. 2d 647. It is likewise true that, in Tennessee, statutes of limitation are favored as statutes of repose. City of Knoxville v. Gervin, 169 Tenn. 532, 542, 89 S.W.2d 348, 103 A.L.R. 877.

But it seems quite clear, under Tennessee authority, that appellees' actions are not barred by the statute of limitations. In Tennessee Eastman Corporation v. Newman, 22 Tenn.App. 270, 276, 280, 121 S.W.2d 130, it was distinctly held that the failure of an employer to comply with Secs. 5339 and 5340 of the Tennessee Code, requiring the furnishing of means for clearing the air of soda ash dust at the place where the employee worked, was a continuous tort, beginning with the employment and ending upon the termination thereof, at which time the employee was alleged to have become totally disabled, as a result of inhaling the dust. The employee's action for damages was accordingly held not barred by the one-year statute of limitation. The Court of Appeals distinguished the earlier case of Brown v. Tennessee Consolidated Coal Co., 19 Tenn. App. 123, 83 S.W.2d 568, relied upon by appellant, upon the ground that in the Brown case more than two years before the institution of the suit the employer had installed an apparatus for dampening the atmosphere and controlling the dust, as a result of which the employee had breathed no coal dust and, therefore, the employer had committed no tort contributing to the injured condition of the employee at the time he brought his suit. Therefore, the one-year period of limitation was held to have expired since the commission of the last tort by the defendant employer.

In the case at bar, the answer of appellant admitted that the appellee, Mrs. Sartin, remained in its employ as seamstress up to February 27, 1940; and her uncontradicted testimony was that February 27th was the last day upon which she worked at appellant's plant. The working conditions at the plant were unchanged up to the time of her discharge. The actions of appellees were commenced in the Circuit Court of Knox County, Tennessee on February 15, 1941; and removed by appellant to the United States District Court for Eastern Tennessee. The actions were, therefore, brought within the period of one year from the time Mrs. Sartin ceased breathing the dust, which the jury by its verdict has found to have proximately caused her personal injury.

A petition for certiorari in Tennessee Eastman Corporation v. Newman, supra, was denied by the Supreme Court of Tennessee, and the case was cited with approval in Holliston Mills of Tennessee v. McGuffin, 177 Tenn. 1, 8, 145 S.W.2d 1, 146 S.W.2d 357. See, also, Steiner v. Spencer, 24 Tenn.App. 389, 396, 145 S.W. 2d 547.

In these two appealed cases, an experienced and able District Judge presided at the trial. The record reveals his thorough understanding of the expert testimony, which he repeatedly simplified and explained by interposed interrogation. His rulings were uniformly fair and complied with the rules of evidence. No exception was noted to his charge. It is, therefore, to be assumed that he instructed the jury as to the burden which rested upon the plaintiffs of proving their cases by a preponderance of evidence; that he explained the doctrine of proximate cause, and expounded correctly all other applicable law. The conflicting issues of fact have been resolved by the jury in favor of the appellees; and the verdicts have been upheld by the trial judge.

In these circumstances, where no error of law is apparent and there is substantial evidence to support the verdicts, the judgments thereon must be and are affirmed.