Lucey Boiler & Manufacturing Corporation *v.* Hicks.

(*Knoxville*, September Term, 1948.)

(May Session, 1949.)

Opinion filed July 2, 1949.

FRAZIER, ROBERTS & WEILL, Chattanooga, for plaintiff in error.

MAURICE M. WEAVER, Chattanooga, for defendant in error.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

Arthur Hicks died during the course of his employment by Lucey Boiler & Manufacturing Corporation. The trial court found that his death arose out of his employ-

702

ment and awarded his widow, Mattie Hicks, the amount required by the Workmen's Compensation Act. Code, Section 6851 et seq. The employer has appealed, and insists that there is no evidence to support this finding.

As recognized by plaintiff in error, in workmen's compensation cases findings of the lower court supported by any material evidence will not be disturbed on appeal. The testimony is considered only for the purpose of ascertaining whether there is any such evidence. *Anderson* v. *Volz Construction Co.,* 183 Tenn. 169, 173, 191 S. W. 2d 436.

Hicks had been working for this employer several years. He was a strong man and appeared to be in good health during this time to within the hour of his death on January 14, 1948. He did his work as usual that day until, during the course of the afternoon, his finger was severely mashed while he was trying to pry a head off of a die with a 50 to 75 pound iron bar.

After first aid treatment, he was driven by a fellow employee to the company's doctor at whose office he arrived within approximately twenty-five minutes after the injury. About half of the last joint of the left ring finger was mashed off, "and what bone remained was just splintered and slivered", and it was "bleeding a good deal". The doctor administered novocain, amputated the finger at this point, and dressed the wound all in the course of probably twenty minutes after arrival. Hicks and his driver then went to his car and started back to his place of employment. Between five and ten minutes afterwards, and while so returning, Hicks suddenly slumped and died almost instantly. This was approximately fifty-five minutes after his finger was injured.

An autopsy was performed and it was discovered that he had died of a ruptured aneurysm of the aorta, being the artery that leads from the heart. The tear was "about an inch and a half long. It was a jagged tear, it was clean through it and this tear had ruptured directly into the sac around the heart". This condition had been caused by syphilis eating into the walls of the aorta, thus causing a thinning and weakening of the inner parts of the wall. This condition had existed for several years. A person in that condition may die at any time, and will die suddenly "if it ruptures into the heart like this one did". Death may come while the party sleeps. The disease is always fatal.

. It was the opinion of the doctor who performed the autopsy that the injury to the finger had nothing to do with Hicks' death, and that its happening about fifty-five minutes before his death was a pure coincidence. It is insisted by the employer that there is no evidence that the injury to the finger in any way contributed to Hicks' death.

The insistence of Hicks' widow is that the accident, and its pain excited him, and that he was excited also by watching the doctor perform the amputation; that this excitement raised his blood pressure, and that the increased blood pressure caused the aorta, already weakened by disease, to rupture.

■ If there is evidence to sustain the insistence that the previous heart ailment was aggravated so as to cause this death at the time it occurred, then it is compensable. *Tennessee Eastman Corporation* v. *Russell*, 150 Tenn. 331, 265 S. W. 540; *Sanders* v. *Blue Ridge Glass Corporation*, 161 Tenn. 535, 33 S. W. 2d 84. But the employer contends that in order to reach this conclusion it is

necessary to base such finding upon presumption drawn from presumption as follows: (1). that Hicks became excited; (2) that the excitement increased his blood pressure; (3) that the increased blood pressure continued until his death; (4) that the increased blood pressure caused the rupture.

Henderson, a fellow employee, saw the accident. He testified that when the accident occurred Hicks "jumped and hollered and grabbed his hand" and appeared to be in pain. Weaver, the employee who drove Hicks to the doctor's office, said that on the way to that office Hicks "suffered, faint", and that when he came out of the doctor's office and started back to his place of employment Hicks "seemed like his voice kind of changed, he didn't talk as strong as he did. Sick, he kind of failed or, you know, I thought he was nervous or something over his finger . . . seemed like he talked a little faulty or something", he was "sweating over the face". It is, therefore, established by the direct testimony of eye witnesses that Hicks was undergoing emotions from the time he received this injury until he entered the doctor's office, and when he left the doctor's office a few minutes before his death.

Dr. Wood, whose general qualifications as a doctor were admitted, testified that:—"In my opinion, any emotion such as fear and anger or excitement would tend to raise the blood pressure. The blood pressure would be increased in all people, in my opinion, but a person with aortic regurgitation, they would be more susceptible to emotion than the normal person would"; that "the blood pressure increases and causes a rupture of the aneurysms as a result of that". There further appears during his examination the following:—"Now, Doctor,

in this individual who had apparently an aortic insufficiency with a concomitant aneurysm, if he had a sudden smashing blow to his finger at 2:30 in the afternoon, could this, in your opinion, cause his blood pressure to raise so rapidly as to put such force on that aortic aneurysm as to cause a lesion in it? A. Yes sir." And gave it as his opinion "that this aneurysm was weakened by the excitement and it ruptured later, and that is the possibility and probability".

In *Lee* v. *Aluminum Co.*, 184 Tenn. 287, 198 S. W. 2d 639, 640, this Court (quoting) said: "A sufficiently qualified witness may testify as to whether certain detailed occurrences would be a . . . probable, or possible, cause of a certain physical result, or of death. . . . a medical witness may state what would be a sufficient cause for a given result, whether a given condition could have resulted from a specified injury."

In *Sanders* v. *Blue Ridge Glass Corporation*, 161 Tenn. 535, 33 S. W. 2d 84, 85, this Court, referring to the testimony of an expert, said: "He testified that a blow or lick 'might have a tendency to increase the leakage of the heart; it might increase that.' This is expert testimony sustaining the opinion or finding of the Chancellor that the injury aggravated the already abnormal condition of petitioner's heart."

We must conclude that the above related testimony of two fellow employees and that of this doctor is material evidence in support of the finding of the Circuit Judge that "the inference to be drawn from the facts of this case is that the heightened blood pressure caused by the painful finger injury split the already weakened aorta and hastened the employee's death". The rapid succession of events during the immediately

important fifty-five minutes here involved, the sequence in which those events occurred, all, considered, too, in the light of natural conclusions which result in back tracking from effect to locate cause, seem to make the finding of the Trial Judge all the more logical. However that may be, those findings are supported by material evidence; thus, conclusive here. Compare *Riverside Mill Co.* v. *Parsons*, 176 Tenn. 381, 141 S. W. 2d 895. That evidence is not made up of mere presumptions, one predicated upon the other. It is the direct testimony of eye witnesses as to physical acts, and appearances, and the testimony of experts as to the possibility and probable results of those facts. The result which the expert said was possible and probable from those facts is the result which did obtain here.

During direct-examination, the attorney for the widow read to the expert witness from medical books and followed this with a query as to whether the expert agreed with the statement so read. This method of examination was strenuously but unsuccessfully objected to by the attorney for the employer. It is assigned here as error. Possibly it was. There was no jury. That is material here. Much of the same matter was gone over again in cross-examination. After a careful reading of all evidence, the conclusion reached is that the objected to manner of examination does not appear to have been prejudicial. Code Section 10654.

Affirmed with costs adjudged against Lucey Boiler & Manufacturing Corporation and its surety.

All concur.