# IN THE COURT OF APPEALS OF IOWA

No. 21-0300
Filed December 15, 2021

**IN THE INTEREST OF B.L.,**
**Minor Child,**

**B.L., Minor Child,**
        Appellant.
_____


        Appeal from the Iowa District Court for Plymouth County, Daniel P. Vakulskas, District Associate Judge.


        An adjudicated delinquent appeals from the district court's finding that statutes mandating his records become public for at least two years are constitutional.  **AFFIRMED.**


        Meret Thali (until withdrawal) and Joseph W. Kertels of Juvenile Law Center, Sioux City, for appellant.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee.


        Heard by Greer, P.J., Badding, J., and Carr, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**GREER, Presiding Judge.**

In 2017, B.L. was adjudicated delinquent after committing an act against an individual under the age of twelve that, were B.L. an adult, would be considered sexual abuse in the second degree, a forcible felony. *See* Iowa Code § 702.11(1) (2017). In 2020, B.L. moved to have the juvenile court retain jurisdiction of his case past his eighteenth birthday[1] to keep his record confidential until the time it could be sealed. After a 2021 hearing on the motion, although the State did not resist, the court dismissed B.L.'s case and waived the requirement that B.L. register as a sex offender. But the court denied the motion to make B.L.'s records confidential. Arguing this action constituted cruel and unusual punishment, B.L. appeals the ruling on his motion.

**I. Background Facts and Proceedings.**

We accept as true that, as a teenager, B.L. performed a sex act on a child under the age of twelve. Were B.L. an adult, the act would be sexual abuse in the second degree, which is considered a forcible felony. After the court adjudicated B.L. to be a delinquent child, he was placed in a residential treatment facility and the requirement that he register as a sex offender was deferred. B.L. spent nearly four years on probation, eventually moving in with step-family members and then his parent while he continued his required programs and therapy. It is undisputed that B.L. made considerable progress toward reunification with his parents and siblings.

---

[1] B.L. turned eighteen in November 2020.

As his eighteenth birthday approached in 2020, B.L. had progressed such that the juvenile court was preparing to discharge him from probation. However, Iowa Code section 232.147(4) (2020)[2] states:

> Official juvenile court records containing a petition or complaint alleging the commission of a delinquent act that would be a forcible felony if committed by an adult shall be public records subject to a confidentiality order under section 232.149A or sealing under section 232.150. However, such official records shall not be available to the public or any governmental agency through the internet or in an electronic customized data report unless the child has been adjudicated delinquent in the matter.

Iowa Code section 232.150 provides that the court shall set a hearing to seal the records two years after the date of the last official action. For B.L., this meant his records would not be sealed before 2023.

In 2021, the court held a hearing to review B.L.'s case and progress and address the motion. At the hearing, B.L. asked the court to find Iowa Code section 232.147 unconstitutional as cruel and unusual punishment under the Iowa and United States Constitutions.[3] Once the information was made public, he asserted, it would be easily found on the internet by anyone with access—anyone could easily take a screenshot and preserve that photograph beyond the two-year span even if his records were sealed. And, the State's recommendation that B.L. not be

---

[2] Between the time B.L. was adjudicated a delinquent in 2017 and filed the motion in 2020, no substantive changes were made to the applicable code sections. In this opinion, we cite the 2020 version of the code.

[3] The Iowa Supreme Court has evaluated both constitutional clauses through the same framework laid out by the United States Supreme Court; as such, we consider the two simultaneously. *See State v. Bruegger*, 773 N.W.2d 862, 882 (Iowa 2009) ("Our past cases have generally assumed that the standards for assessing whether a sentence amounts to cruel and unusual punishment under the Iowa Constitution are identical to the Federal Constitution.").

required to register as a sex offender would be nullified by his records being published. The State did not resist the motion.

Still, the court determined that the law could not be cruel and unusual punishment because it was not punitive.[4] Therefore, the court dismissed the case after finding B.L. would not be required to register as a sex offender and the records would remain public, consistent with Iowa Code section 232.147(4).

**II. Standard of Review.**

We conduct a de novo review of constitutional challenges. *In re T.H.*, 913 N.W.2d 578, 582 (Iowa 2018).

**III. Analysis.**

Iowa Code section 232.147(3) directs: "Official juvenile court records in all cases alleging the commission of a delinquent act except those alleging the commission of a delinquent act that would be a forcible felony if committed by an adult shall be confidential and are not public records." The legislature provided a process for sealing the records:

> In the case of an adjudication of delinquency, the court shall upon its own motion schedule a sealing of records hearing to be held two years after the date of the last official action, or the date the child becomes eighteen years of age, whichever is later. . . . The court, after hearing, shall order the official juvenile court records in the case including those specified in sections 232.147, 232.149, 232.149A, 232.149B, and 915.25, sealed if the court finds all of the following:
> (1) The person is eighteen years of age or older and two years have elapsed since the last official action in the person's case.
> (2) The person has not been subsequently convicted of a felony or an aggravated or serious misdemeanor or adjudicated a delinquent child for an act which if committed by an adult would be a

---

[4] As the district court observed, the records had never been confidential—they had been public all along. However, neither party presented evidence to support or negate this statement.

felony, an aggravated misdemeanor, or a serious misdemeanor and no proceeding is pending seeking such conviction or adjudication.

(3) The person was not placed on youthful offender status, transferred back to district court after the youthful offender's eighteenth birthday, and sentenced for the offense which precipitated the youthful offender placement.

(4) The person was not adjudicated delinquent on an offense involving a violation of section 321J.2.

Iowa Code § 232.150(1)(a). Under this process, following his adjudication as delinquent, there is no mechanism for the court to seal B.L.'s records until February 2023.[5] Even then, the records will only be sealed if he meets the listed criteria.

B.L. argues the imposition of this two-year waiting period is cruel and unusual punishment. The Iowa Constitution states, "Excessive bail shall not be required; excessive fines shall not be imposed, and cruel and unusual punishment shall not be inflicted." Iowa Const. art. I, § 17. The United States Constitution likewise promises "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "This basic concept stands for the proposition that even guilty people are entitled to protection from overreaching punishment meted out by the state." *Bruegger*, 773 N.W.2d at 872. We first evaluate whether the statute constitutes punishment before moving on to whether it is cruel and unusual.

**A. Punishment.**

"Before we can assess whether [a statutory mandate] is cruel and unusual, we must first determine that [it] is, in fact, punishment." *T.H.*, 913 N.W.2d at 587.

---

[5] At the district court hearing on the issue, "publication" of his record was explained to mean that B.L.'s name and charge would appear on Iowa Courts Online, as well as the demarcation "dismissed." Additionally, someone would be able to go to the county clerk's office and request to see a copy of the charges. Neither medium would allow someone to see the entirety of B.L.'s file.

We do this through a two-prong analysis: first considering (1) did "the legislature intend[] the statute to be punitive, rather than civil, in nature," and then (2) if it was not intended to be punitive, is it still "'so punitive either in purpose or effect as to negate' the nonpunitive intent." *Id.* (citation omitted). Both parties agree that this statute was not intended to be punitive,[6] so our discussion begins with the second prong.

In determining whether the nonpunitive intent has been negated, the United States Supreme Court has established a series of factors to evaluate, known as the *Mendoza-Martinez* factors. *See Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963). These factors[7] are:

> [(1)] [w]hether the sanction involves an affirmative disability or restraint, [(2)] whether it has historically been regarded as a punishment, [(3)] whether it comes into play only on a finding of scienter, [(4)] whether its operation will promote the traditional aims of punishment—retribution and deterrence, [(5)] whether the behavior to which it applies is already a crime, [(6)] whether an alternative purpose to which it may rationally be connected is assignable for it, and [(7)] whether it appears excessive in relation to the alternative purpose assigned.

*Id.* The Court later elaborated that the factors are "useful guideposts," but that the most relevant factors are "whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment;

---

[6] In B.L.'s appellate brief, he addressed the legislative goal of protection: "Just as the legislature would want to protect the public by alerting them of the presence of registered sex offenders in their community they would also want to protect the public by alerting them of the presence of a juvenile who has committed one of these more serious felonies."

[7] These factors are also utilized under Iowa case law for a similar Iowa constitutional analysis. *See, e.g.*, *T.H.*, 913 N.W.2d at 588.

has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose." *Smith v. Doe*, 538 U.S. 84, 97 (2003) (citation omitted). We examine each of the seven factors in turn.

*1. Affirmative Disability or Restraint.*

The publication of B.L.'s record alone does not impose any affirmative disability or restraint. The statute does not require or prevent B.L. from doing anything. It is undoubtedly true that there are social and economic consequences from these records being public even for a short time—we do not minimize these. But, in support of his assertion that publication of his record is an affirmative disability or restraint, B.L. points only to sources relating to the sex offender registry. And where the sex offender registry comes with a slew of expectations and rules about where one can live, work, and socialize, as well as rigorous registration protocols, this statute does not create the same affirmative disabilities and restraints. *Cf. T.H.*, 913 N.W.2d at 588–89 (using this factor to weigh in favor of finding the statute punitive given the restrictive obligations under the registry's requirements). This factor, then, weighs against finding the statute punitive.

*2. Historically Regarded as Punishment.*

For adults:

Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment. On the contrary, our criminal law tradition insists on public indictment, public trial, and public imposition of sentence. Transparency is essential to maintaining public respect for the criminal justice system, ensuring its integrity, and protecting the rights of the accused. The publicity may cause adverse consequences for the convicted defendant, running from mild personal embarrassment to social ostracism. In contrast to the colonial shaming punishments, however, the State does not make the publicity and the resulting stigma an integral part of the objective of the regulatory scheme.

*Smith*, 538 U.S. at 98–99.

Still, *T.H.* made clear that actions that might not historically be considered punishment for an adult might be for a child. 913 N.W.2d at 589–90 ("While the dissemination of accurate information about a criminal record is not historically punitive for adults, juveniles are traditionally shielded from such publication. Under the juvenile court's jurisdiction, juveniles surrender certain procedural safeguards afforded to adults—namely a trial by jury—in exchange for the benefits of a confidential, rehabilitative system. . . . By sealing records, juvenile courts prevent youths from enduring lasting stigma for adolescent blunders."). The *T.H.* court went on to explain how, were a child adjudicated and required to be placed on the sex offender registry, a vast amount of their personal information would be shared with the world and could never truly be removed[8]—"a possibility that is antithetical to the traditional treatment of juveniles within our justice system." *Id.* at 592. And at the hearing, the juvenile court officer supervising B.L. testified:

> [I]n my position, it is my belief that if [B.L.] is not being—if the Court accepts Juvenile Court Services's recommendation to avoid the registry, in my opinion, and it is in some way—in—in some ways it's—it's punitive, because then his public records would be available to any potential employer or school that would type Iowa courts online, and public charges would be available; not the work he has done in Juvenile Court Services, because that is all confidential, but the charges itself would be available to the public.
> Now, potential employers and colleges may—may or may not have the time to investigate further or ask questions as to what was the final outcome. Most of the time once an employer or college sees something related to sexual abuse, basically it's just automatically

---

[8] Both the *T.H.* court and B.L. point to the reality of our digital world and how a simple screenshot can preserve what even the courts seal. 913 N.W.2d at 592 ("While T.H.'s period of registration may be less than an adult's, a member of the public need only take a screen shot of the website to preserve T.H.'s presence forever.").

turned down. That has been my experience with previous juveniles who have now registered and are facing that issue.

He makes a good point. Although B.L.'s rehabilitation was successful, those records are unavailable and unlikely to be a consideration once the public charge is known. While the *T.H.* court went on to bolster its concern with a discussion of how much the registry publishes about its members, the base concern is the same: we keep juvenile records confidential in the spirit of rehabilitation over punishment. In this vein, the second factor leans in favor of publication being punitive in nature.

*3. Scienter.*

Both parties agree that this element, which evaluates "whether regulations are triggered upon a finding of scienter," weighs against determining the publication of B.L.'s records is punitive. The statute does not require a scienter finding, only an adjudication of delinquency. *See* Iowa Code §§ 232.147, 232.150. And historically, this factor has been given less weight than its co-factors. *See Smith*, 538 U.S. at 97, 105; *T.H.*, 913 N.W.2d at 592.

*4. Retribution and Deterrence.*

The fourth factor turns to whether the statute promotes retribution and deterrence, the traditional aims of punishment. However, even if a statute is found to deter future wrongdoing, the factor also requires the statute to be retributive for it to weigh toward a finding of punishment. In his appellate brief, B.L. argues that this factor leans toward the statute being punitive because it can come with a number of hardships. However, this is not enough to prove it is *retributive*. Black's Law Dictionary defines retribution as "Punishment imposed *as repayment or*

*revenge* for the offense committed." *Retribution*, *Black's Law Dictionary* (9th ed. 2009) (emphasis added). Retribution, then, invokes a sense of "pay back" that is not present in this statute—B.L. is not being asked, through this statute, to spend time incarcerated or even pay a fine or fee. Instead, the statute promotes transparency and community protection as discussed below. As in *T.H.*, then, this factor weighs against finding the statute punitive. *See* 913 N.W.2d at 593–94.

*5. Behavior is Already a Crime.*

This factor, like scienter before it, has also not typically been given much weight in the balance. *See Smith*, 538 U.S. at 105; *T.H.*, 913 N.W.2d at 594. The court in *T.H.* believed that the fact that a statute was triggered by a past crime was not sufficient to say that the statute applied to behavior that was already criminal. Indeed, as in *T.H.*, past criminal behavior is the necessary starting point of making public criminal records—the statute is not truly criminalizing the behavior twice. 913 N.W.2d at 594. As such, this factor weighs against finding the statute punitive.

*6. Alternative Purpose.*

Both parties again agree that this factor, considering if an alternative purpose can rationally account for the action, weighs against considering the waiting period punitive. The alternative, nonpunitive purpose here, as was present in *T.H.*, is protecting the community. *See id.* We would add, however, that transparency in court records is also "essential to maintaining public respect for the criminal justice system, ensuring its integrity, and protecting the rights of the accused." *Smith*, 538 U.S. at 99. While we typically cloak juvenile records in the spirit of rehabilitation, as discussed above, there are these other, nonpunitive reasons to disseminate limited, truthful information.

*7. Relation to Alternative Purpose.*

This final factor evaluates "whether the legislature's chosen means to carry out its legitimate interests are so excessive as to cross the line from a civil regulation to a criminal punishment." *T.H.*, 913 N.W.2d at 594. Our supreme court has regarded this final factor the most important of the seven. *Id.* In both *Smith* and *T.H.*, the focus was on recidivism. 538 U.S. at 103; 913 N.W.2d at 595. This focus made sense as both cases were considering the sex offender registry, and its many impositions, as not only distributing information but placing barriers between sex offenders and children. However, the public dissemination of court records takes a different tack in protecting the community. It does not place these barriers to prevent recidivism but instead gives individuals the opportunity to gather limited information about the background of those with whom they interact. Further, publication maintains the "integrity" of the court system, *Smith*, 538 U.S. at 99, and keeps the public informed of what is occurring in the judicial branch of their government.

With this purpose in mind, it is hard to imagine a less excessive way of providing the community the minimum necessary information. A far cry from the sex offender registry, posting B.L.'s record on Iowa Courts Online will relay only his name, charges, and that his case has been dismissed. Further, if B.L. follows the mandates of Iowa Code section 232.150, the record will only remain viewable for two years. Unlike *T.H.*, where the "totality of the statute's impositions" were "coupled with the mass publication of the juvenile's personal information," there are no such impositions involved in this case that make the legislature's decision

to require the posting of B.L.'s record excessive. So this factor weighs against finding the statute is punitive.

*8. Balancing.*

Ultimately, with all but one factor weighing against finding the statute punitive, requiring a two-year period before B.L.'s records involving a forcible felony juvenile adjudication can be sealed is not punishment. We therefore need not determine if it is cruel and unusual. Thus, absent a change in legislation to address B.L.'s pointed concerns about the application of the statute in the age of social media ruin, there is no remedy we can offer.

**IV. Conclusion.**

As Iowa Code sections 232.147 and 232.150 are not, on balance, punitive, they cannot constitute cruel and unusual punishment. We affirm the district court's finding of such. B.L.'s records shall be accessible to the public until at least the hearing to seal his records, already scheduled for 2023.

**AFFIRMED.**