OSCAR ALBERT HARRISON *v.* WILLIAM P. McOWEN *et al.*

(CC 682)

Submitted April 11, 1944. Decided June 16, 1944.

*W. W. Smith,* for plaintiff.
*Hogsett & St. Clair* and *Maxwell W. Flesher,* for defendants.

KENNA, JUDGE:

This action of trespass on the case was instituted in the Circuit Court of Cabell County by Oscar Albert Harrison against William P. McOwen, Harvey C. Taylor and the City of Huntington, for the purpose of recovering damages for injuries done to Lot 66, Plat 1, in Edgewood Addition of the City of Huntington, belonging to the plaintiff,

by reason of quarrying stone from an adjoining lot belonging to William P. McOwen and leased for that purpose to Harvey C. Taylor and by him subleased to the City of Huntington, which had the Works Progress Administration remove the stone for the purpose of improving the streets of Huntington. From an order overruling demurrers to the declaration, which contains but one lengthy count, the trial judge certified in general the legal questions thus arising to this Court, without specifying definitely the questions that he wished decided.

The declaration alleges specifically that the defendant, contriving and wrongfully intending to injure and damage the plaintiff and the plaintiff's land, wrongfully and injuriously caused several powerful explosions to take place in the operation of the stone quarry, for the purpose of preparing stone for removal therefrom, which explosions caused openings, cracks and crevices in plaintiff's land and premises, through which water and melted snow seeped from the surface, froze and thawed, causing the land near and below it to slide and causing the location of a spring and the flow therefrom to be different from what it was before such explosions took place, with the same resultant damage.

The declaration alleges that while the explosions complained of took place before the plaintiff became the owner of Lot 66, that the resultant damage did not become discernible and was not disclosed until after he had acquired title.

There is no particular duty, breach of which gave rise to the cause of action, expressly set out in the declaration, but apparently, from the circumstances alleged, the personal duty of the owner of the adjoining lands to not deprive the land of the plaintiff of lateral support, nor to interfere with its subjacent support, are duties for the breach of which recovery is sought. The declaration alleges further matters that tend to show the interference with percolating waters upon the plaintiff's land by the acts of the defendants and the destruction of an underground spring, not in use, as a consequence.

The gravaman of the plaintiff's right of action may be said to be stated in the following quotation from his declaration:

"And the plaintiff further avers that said City of Huntington paid to said Harvey C. Taylor, large sums of money under the terms of their said contract and in payment of and as compensation for the stone that was quarried and hauled from said stone quarry and delivered to the said City of Huntington as aforesaid, yet the said defendants and all of whom are residents of Cabell County, well-knowing the premises and well-knowing said lands to be subject to slips and slides, but contriving and wrongfully intending to injure and prejudice the. plaintiff in this respect and to deprive him of the use, benefit, and advantage of the said lot and the improvement thereon, and to hinder and prevent the owner and particularly this plaintiff from using and enjoying the said premises, and the rents, issues and profits therefrom, in so ample and beneficial a manner as he had theretofore done, and as of right he ought to have done and otherwise would have done, and to put him to great charge, expense, trouble and inconvenience, while the plaintiff was so possessed of said premises and improvements as aforesaid, to-wit, on the 24th day of August, 1938, or soon thereafter, and on divers other days and times, between that time and the day of the commencement of this action, wrongfully and injuriously set off numerous heavy blasts of high explosives in operating said stone quarry as aforesaid, and stripped and removed the overburden therefrom, and filled, graded and leveled the said road and street, which blasting and explosions, and the removing of large quantities of dirt, and stone, and said filling, grading and levelling, gradually and during the succeeding seasons, caused numerous openings, cracks and crevices to appear and to be exposed at and near said premises and caused a certain spring at or near said stone quarry to be sunk and to be lowered so that the water therefrom flowed and wasted away underneath the surface of the land

and adjacent thereto instead overflowing on the surface and on top of the said lands as it had previously done, and caused the rain and surface water and melted snow and ice accumulated in said cracks and crevices on said premises, and in the course of time such rain, surface water and melted snow, and the freezing and the thawing thereof, caused the land at, near and below said stone quarry to slide, and caused great quantities of land to slide and to move gradually and repeatedly from its natural and former position and location down hill towards said Fitzpatrick Drive, not only on the lands and lots of said William P. McOwen, but also on the adjacent lot and premises owned and occupied by the plaintiff."

The specific points upon which the demurrer to the declaration of the City of Huntington rested, which are inclusive of the points raised by the other defendants, are therein stated to be as follows:

"1. That the facts and allegations, acts and conduct of the City of Huntington, alleged and set forth in the plaintiff's declaration, if true, would constitute a governmental act or function on the part of The City of Huntington, a municipal corporation, for which they would not be required to respond to damages.

2. That the facts and allegations set forth in the declaration conclusively show that the plaintiff is not in privity with any contract, agreement or understanding which may have been entered into between The City of Huntington and/or William P. McOwen, Harvey C. Taylor and the Works Progress Administration.

3. That the declaration alleges that the Works Progress Administration entered upon the lands of William P. McOwen, and does not assert or allege that the acts and conduct complained of were occasioned by any entry thereupon by The City of Huntington, its officers, servants, agents or employees.

4. That the declaration alleges and asserts that the plaintiff was not the owner and holder of the

property alleged to have been damaged, at the time any cause or causes of action may have accrued.

5. That the facts and allegations set forth in the declaration show that the alleged damage complained of was caused by rains and freezing weather, and that, therefore, such damage to the land of the plaintiff, if any there may be, was occasioned by an act of God, and not due to any carelessness, neglect or fault on the part of the City of Huntington."

As to the first point, we believe that there is no question that it lacks merit, the reason for which need not be discussed because many West Virginia cases establish the liability of a municipality for the care and maintenance of its streets, and if that be so it follows naturally that its liability may spring from conduct such as quarrying, which is a contributing factor to the performance of that duty.

As to the second point, we do not believe that it is necessary that the liability of the City of Huntington should rest upon contract nor upon privity between the plaintiff and the lessee, the sub-lessee, the Works Progress Administration, or the lessor. True, the declaration contains an allegation concerning provisions contained in the lease, the effect of which was that the original lessee agreed to save harmless the lessor from damages that resulted by reason of operations conducted in order to carry out the purposes of the lease, and that the sub-lessee was also so bound. Since this is an action brought for the purpose of recovering a judgment in tort, the allegations referred to, we believe, can be regarded as surplusage.

As to the Works Progress Administration undertaking to execute a project sponsored by the City of Huntington and entering upon the lands of William P. McOwen for that purpose, and that none of the acts was caused by the entry of the City of Huntington on the lands of William P. McOwen, if we understand this assignment correctly, we believe that there is no doubt of the liability of the City for damages which may have resulted from un-

avoidable acts that it instructed the Works Progress Administration to perform pursuant to a project sponsored by it. A different case might be presented if the allegations of the declaration rested the contention of liability primarily upon the negligence of the employees of the W. P. A. We do not believe that the allegations before us can be so read.

We believe that an examination of the following West Virginia cases will answer the question presented by the fourth assigned ground of demurrer, they holding to the effect that the statute of limitations commences to run when damages have been suffered, and not at the time of the tortious act that caused the injury to ultimately accrue. *Henry* v. *Ohio River R. Co.,* 40 W. Va. 234, 21 S. E. 863; *Day* v. *Louisville Coal & Coke Co.,* 60 W. Va. 27, 53 S. E. 776, 10 L. R. A. (N. S.) 167; *Pickens* v. *Coal River etc. Co.,* 66 W. Va. 10, 65 S. E. 865, 24 L. R. A. (N. S.) 354. Based upon the foregoing cases, we believe that it is perfectly clear that the result of the alleged acts of the defendant did not happen at the actual time of the blast, but that it did occur when the alleged slide took place. Then the plaintiff owned this land alleged to have been damaged.

As to the fifth ground of demurrer, we are of the opinion that it is well taken. The quarrying and blasting took place in August, 1938. The effect was not discoverable until after the plaintiff acquired title to Lot 66 on on the 25th day of March, 1940, and, according to the allegations of the declaration, probably not until the severe winter of 1942-3, when the land of the plaintiff commenced to slide and slip, due to numerous openings, cracks and crevices that caused rain and surface water and melted snow and ice to accumulate, freeze and thaw, and thus bring about the movement of earth upon the plaintiff's land. The brief of the plaintiff below ably presents the theory that Harrison's lot has, by the acts of defendants, been deprived of lateral support, and that he has been damaged in consequence. As we understand the law governing lateral support, it is entirely disconnected

from the question of drainage and is based upon cave-ins caused by the operation of gravity upon land in its natural condition. Here there is an intervening essential element in the sequence of facts alleged in the declaration. The damage was not proximately caused by the removal of lateral support, although that may have been its remote cause. The harm occurred only after the intervention of repeated accumulations of water, ice and snow in the crevices, their freezing and thawing, for a period of not less than eighteen months, and possibly longer. The declaration alleges that "the premises" were subject to slips and slides. It may be said that defendants should have been able to foresee those occurrences. Perhaps, but if that be true, it applies to the plaintiff also, who, by the use of reasonable care, might have prevented the injury from occurring. Exactly how far from the plaintiff's line the earth movement began is not alleged, and, consequently, based upon the averments of fact as the declaration now stands, we do not believe it can be regarded as charging the wrongful removal by the defendant of the lateral support to which the plaintiff was absolutely entitled for his adjacent lot. We do not believe, either, that the allegations in the declaration concerning the loss of the plaintiff's spring and the lowering thereof, under the circumstances alleged, can be treated as caused by the wrongful removal of subjacent support.

Based upon the foregoing observations, we are of the opinion that the order of the trial court overruling the demurrer of the City of Huntington to the plaintiff's declaration should be reversed on the basis of the fifth assigned ground of demurrer, and that the case should be remanded and further leave granted to the plaintiff to amend so as to show more plainly for what wrongful act of the defendant he is seeking to recover.

*Reversed and remanded.*