Chester **RAILING** and Paul **Railing, d/b/a C & P Coal Company, Plaintiffs,**

v.

**UNITED MINE WORKERS OF AMERICA, Defendant.**

**Civ. A. No. 698–F.**

United States District Court
N. D. West Virginia,
Fairmont Division.

Oct. 28, 1967.

William S. Tribell, John J. Tribell, Tribell & Tribell, Middlesboro, Ky.,

William G. Johnson, Johnson & Johnson, Clarksburg, W. Va., for plaintiffs.

M. E. Boiarsky, Charleston, W. Va., Michael Tomasky, Morgantown, W. Va., Harrison Combs, Willard P. Owens, Washington, D. C., for defendant.

CHRISTIE, District Judge:

This matter is pending on the motion of defendant United Mine Workers of America for summary judgment. The complaint herein alleges injury to plaintiffs' business and property as a result of acts [in violation of Section 303 of the Labor-Management Relations Act of 1947 (29 U.S.C.A. § 187)] on the part of officers, agents, representatives and members of the United Mine Workers of America. In conjunction with their federal claim, plaintiffs seek recovery of both compensatory and punitive damages for non-peaceful, violent, coercive and conspiratorial activities and conduct on the part of the union of such a wilful and wanton nature as to give rise to a common-law tort liability. This latter claim is asserted under the theory of pendent jurisdiction. The activity of which plaintiffs complain began in April of 1958 and continued through July 14, 1959. Plaintiffs originally filed their complaint in this action on June 28, 1961.[1]

This motion for summary judgment is based on two grounds. First, it is contended that the pleadings, depositions, answers to interrogatories, and affidavits show, as a matter of law, that the plaintiffs' claims are barred by the West Virginia statute of limitations under West Virginia Code 55–2–12. Second, it is contended that the pleadings, depositions, and answers to interrogatories propounded by the defendant

---

1. Defendant contends in its brief submitted in support of the motion for summary judgment that "plaintiffs' action was not instituted until July 10, 1961," the date on which the defendant was served with the summons and complaint. However, under Rule 3 of the Federal Rules of Civil Procedure, an action is deemed commenced upon the filing of the complaint with the court and where, as in the present case, a federally created right is involved, the courts have uniformly held that, for the purposes of the tolling of a statute of limitations, an action is deemed commenced at the time the complaint is filed. 2 Moore, Federal Practice, Sec. 3.07, at 783 (2d Ed.1966). See also Jackson v. Duke, 259 F.2d 3 (5th Cir. 1958); Mohler v. Miller, 235 F.2d 153 (6th Cir. 1956).

demonstrate, without dispute, that the activity complained of by the plaintiffs involved only "primary activity" as opposed to the "secondary activity" proscribed by Section 303 of the Act, and, therefore, defendant is entitled to judgment as a matter of law.

A determination of the issues · presented by the defendant's motion for summary judgment requires, at the outset, a consideration of the question of the rules of law that are to be applied. This initial determination becomes necessary not only because of the factual situation presented, but also as a result of the procedural developments subsequent to the bringing of the action. The activity of which plaintiffs complain occurred in Taylor and Barbour Counties within the state of West Virginia. However, plaintiffs chose to institute this action in the United States District Court for the Eastern District of Kentucky—a court in which they were able to obtain jurisdiction over the defendant as provided in 29 U.S.C.A. § 187(b). Upon motion of the defendant, this action was transferred under 28 U.S.C.A. § 1404(a) to this court for the convenience of the parties and witnesses and in the interest of justice. It is the effect of this transfer (with respect to the period of limitations to be applied to plaintiffs' claim under Section 303 of the Act) with which we are now concerned.

## APPLICABLE STATUTES OF LIMITATIONS, ACCRUAL OF CAUSE OF ACTION, AND COMMENCEMENT OF RUNNING OF STATUTE

In actions at law in which a federally-created right is being enforced, in the absence of a controlling federal statute of limitations, the federal courts have resorted to the application of the statute of limitations of the state where the action was instituted. 2 Moore, Federal Practice, Sec. 3.07, at 747 (2d Ed.1966). This practice has been followed in the majority of the decisions concerned with an interpretation of Section 303, since Congress has failed to

provide a statute limiting the time within which an action for damages may be brought. United Mine Workers of America v. Meadow Creek Coal Co., 263 F.2d 52 (6th Cir. 1959) ; International Union of Operating Engineers v. Fischbach & Moore, Inc., 350 F.2d 936 (9th Cir. 1965). Since, under these decisions, the statute of limitations to be applied to the plaintiffs' cause of action as originally instituted in the District Court for the Eastern District of Kentucky would have been the applicable Kentucky statute of limitations, the question arises as to the effect upon this determination of the subsequent transfer under Sec. 1404(a). Fortunately, in deciding this question, a valuable precedent is to be found in Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), where the Supreme Court observed that,

"Whenever the law of the transferee State significantly differs from that of the transferor State—whether that difference relates to capacity to sue, statutes of limitations, or 'substantive' rules of liability—it becomes necessary to consider what bearing a change of venue, if accompanied by a change in state law, would have on 'the interest of justice.' "

In resolving this potential conflict between the "interest of justice" requirement of Sec. 1404(a) and the possible application of different state laws upon a transfer under that section, the Court held that "in cases * * * where the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue." Thus, the effect of a change of venue under Section 1404(a), with respect to the application of state law, is "but a change of courtrooms," and it, therefore, becomes necessary for this court to look to the law of the state of Kentucky, including any borrowing statutes, Cope v. Anderson, 331 U.S. 461, 67 S.Ct. 1340, 91 · L.Ed. 1602 (1947), to determine the statute of limitations applicable to plaintiffs' cause of action.

Kentucky statutes of limitations provide a ten year period for actions upon which no other limitation is prescribed and a five year period for actions involving injury to real or personal property or to enforce liability created by a statute not fixing a different limitation period, KRS 413.060. However, the scope of these limitation provisions is narrowed by the "borrowing statute" which reads,

> "When a cause of action has arisen in another state or country, and by the laws of the state or country where the cause of action accrued the time for the commencement of an action thereon is limited to a shorter period of time than the period of limitation prescribed by the laws of this state for a like cause of action, then said action shall be barred in this state at the expiration of said shorter period." KRS 413.320.

In a recent interpretation of this statute, Seat v. Eastern Greyhound Lines, 389 S.W. 908 (1965), the Kentucky Court of Appeals held that where the period of time provided by the applicable statute in the foreign state in which the cause of action arose is shorter than that provided in Kentucky, then KRS 413.320 applies and the law of the foreign jurisdiction prevails. Although there is some question as to the construction to be given the West Virginia statute of limitations, nevertheless, the fact that it provides the shorter of the two periods of time is not questioned. Thus, we must look to the statutes of the state of West Virginia (the state in which the cause of action arose) to determine whether or not the plaintiffs have brought their action within the time allotted.

But before such a determination can be made, it becomes necessary to establish the date upon which plaintiffs' cause of action "accrued"—the date upon which the applicable statute of limitations would begin to run. The resolution of this question requires a search of the applicable federal law, Rawlings v. Ray, 312 U.S. 96, 61 S.Ct. 473, 85 L.Ed. 605 (1941), for while the state limitations period is controlling, the determination of the time of the accrual of a cause of action to enforce a federally-created right is a federal question. Cope v. Anderson, supra. An extensive search of the District, Circuit, and Supreme Court cases has failed to reveal any decision in which this particular question, relating to "accrual" of a cause of action under Section 303 of the Act, has arisen. Therefore, for the purpose of the application of a statute of limitations, this Court is faced with the necessity of fashioning "from the policy of our national labor laws" a rule of decision to be applied in determining the time within which the liability created by Section 303 of the Labor-Management Relations Act of 1947 "accrues." Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

With respect to tortious conduct, a cause of action generally accrues (commencing the running of the statute of limitations) when the wrongful conduct on the part of a tortfeasor produces an injury or invasion of the personal or property rights of another. Where such injury is the result of a single act, the tort will ordinarily be complete as soon as there has been an invasion of a party's legally protected interest. Under these circumstances, the cause of action immediately accrues and the statute of limitations begins to run. Momand v. Universal Film Exchange Inc., 43 F.Supp. 996 (D.C.Mass.1942). In such a case, characterized by a single violation of a protected right, the plaintiff is entitled to bring suit the moment his interest has been invaded for the recovery of past as well as future damages resulting from the defendant's wrongful act. The concept of the "accrual of a cause of action" initiating the running of a statute of limitations at the moment the wrongdoer's acts result in an injury or invasion of a protected interest is, in this instance, a logical consequence of the purpose of such statutes—the promotion of justice "by preventing surprises, through the

revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." Order of Railroad Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 64 S.Ct. 582, 88 L.Ed. 788 (1943). However, where, as in the present case, there have been numerous acts on the part of the alleged wrongdoer resulting in a continuous invasion of a protected interest, the question of "accrual" presents a more difficult problem and the courts faced with this question have relied on several different theories in an effort to reach a solution.

■ An examination of the cases concerned with the problem of the accrual of a cause of action, involving numerous acts resulting in a continuous invasion of a protected interest,[2] leads this Court to conclude that the most appropriate rule for the purposes of this decision is that applied by the Court in Delta Theaters, Inc. v. Paramount Pictures, Inc., 158 F.Supp. 644 (E.D.La.1958).[3] The question presented there involved the accrual of a cause of action based upon a conspiracy in violation of Section 4 of the Clayton Act alleged to have continued over a number of years. The Court, recognizing "the conceptual difficulties in attempting to split this type of claim," adopted the rule promulgated by the Third Circuit in Bluefields S. S. Co. v. United Fruit Co., 243 F. 1 (3rd Cir. 1917), as follows:

"'The statute began to run when the cause of action arose, and the cause of action arose when the dam-

age occurred. Then action might have been brought.' In the case of successive damages suffered day by day * * * the statute begins to run on each day's damage as it occurs. When suit is brought, the plaintiff may recover only for damages inflicted during the period of limitations immediately preceding the filing of the complaint."

This analysis of the accrual problem seems particularly appropriate in an action based on Section 303 of the Act for damages to a plaintiff's "business or property" since, as was pointed out in Delta Theaters, Inc. v. Paramount Pictures, Inc., supra, determining the actual cause, and the date thereof, of a particular loss for the purpose of establishing the accrual date of a cause of action would normally be impossible except in simple cases where the "acts are individually related to, and more or less contemporaneous with, the resulting damage." The rule will accordingly be adopted and applied in the instant case.

### APPROPRIATE PERIOD OF LIMITATIONS

■ Allowing recovery only for damages inflicted within the period of limitations immediately preceding the filing of the complaint, we must now determine, from a study of the law of the state of West Virginia, the appropriate period of limitations for an action based on Section 303 of the Act. The applicable statute (West Virginia Code 55-2-12) was amended in 1959, the effective date of the amendments being June 11, 1959.[4] It is the defendant's

---

2. See generally, Reynolds Metals Company v. Yturbide, 258 F.2d 321 (9th Cir. 1958); Fowkes v. Pennsylvania Railroad Company, 264 F.2d 397 (3rd Cir. 1959); Winkler-Koch Engineering Co. v. Universal Oil Products Co., 100 F.Supp. 15 (S.D.N.Y.1951); Sandidge v. Rogers, 167 F.Supp. 553 (S.D.Indiana 1958).

3. Accord, Highland Supply Corporation v. Reynolds Metals Company, 327 F.2d 725 (8th Cir. 1964); Streiffer v. Seafarers Sea Chest Corporation, 162 F.Supp. 602 (E.D.La.1958); Radio Corporation of

America v. Rauland Corporation, 186 F. Supp. 704 (N.D.Ill.1956).

4. The statute in effect prior to the 1959 amendments provided:
   "Every personal action for which no limitation is otherwise prescribed shall be brought (a) within two years next after the right to bring the same shall have accrued, if it be for a matter of such nature that, in case a party die, it can be brought by or against his representative; and (b) if it be for a matter not of such nature, shall be

contention that the effect of this amendment is crucial for the purposes of this decision, since the pre-1959 statute provided a two-year limitation only for those actions "of such nature that, in case a party die, it can be brought by or against his representative." Personal actions which did not survive were limited to a one year period under this statute. The amended statute provides a two-year limitation on personal actions "for damages to property" with no mention of the survival requirement found in the earlier provision. It is the defendant's position that a cause of action for damage to "business" would not have survived under the pre-1959 statute, and, as a consequence, plaintiffs' claim for such losses prior to June 11, 1959 (the effective date of the amended statute) would be barred by the one-year limitation period. However, under the view we take of this question, plaintiffs' cause of action was subject to a two-year limitation period under the statute in effect prior to June 11, 1959, as well as the amended statute. In cases such as the present, where the survival of a federal statutory cause of action is concerned, the question of survival depends not upon the state survival statutes or state decisions relating to the subject, but upon an "interpretation of the statute in the light of the common law." Barnes Coal Corporation v. Retail Coal Merchants Ass'n, 128 F.2d 645 (4th Cir. 1942). An interpretation of the cause of action created by the Sherman Act based upon injuries to a person in his *business* or *property* led the Fourth Circuit to conclude in the *Barnes* case, supra, that such a cause of action did in fact survive. The federal courts in construing other statutes creating a federal right of action have also been hesitant to allow a plaintiff to go remediless because of the failure of Congress to explicitly provide a right of survival. Nordquist v. United States Trust Co. of New York, 188 F.2d 776 (2d Cir. 1951); Van Beeck v. Sabine Towing Co., 300 U.S. 342, 57 S.Ct. 452, 81 L.Ed. 685 (1937). Indeed, wherever possible the courts have attemped to ameliorate the "extreme harshness of the old common-law rule abating actions on the death of the tortfeasor," (Cox v. Roth, 348 U.S. 207, 75 S.Ct. 242, 99 L.Ed. 260 [1955]) by interpreting the statute ("in light of the common law") by a "liberal interpretation" of the statute creating the right, or by adopting the liberal provisions of a state survival statute.[5] In the light of the Fourth Circuit's opinion in Barnes Coal Corporation v. Retail Coal Merchants Ass'n, supra, we do not feel constrained to apply an abatement concept, described as "one of the least rational parts of the law," Pollack, Torts 61 (11th Ed.), to an action under Section 303 of the Labor-Management Relations Act of 1947. Accordingly, we conclude that such an action for injury to "business or property" would survive the death of the plaintiff and would, therefore, qualify under the two-year limitation period of the pre-1959 West Virginia statute of limitations. Thus, the applicable period of limitations with respect to the plain-

---

brought within one year next after the right to bring the same shall have accrued, and not after * * *."

The amended statute, West Virginia Code 55-2-12, provides:

"Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common by or against his personal representative."

5. See generally, Pritchard v. Smith, 289 F.2d 153, 88 A.L.R.2d 1146 (8th Cir. 1961); Rau's Estate v. Commissioner of Internal Revenue, 301 F.2d 51 (9th Cir. 1962); Pierce v. Allen B. Du Mont Laboratories, Inc., 297 F.2d 323 (3rd Cir. 1961); Kirk v. Commissioner of Internal Revenue, 179 F.2d 619 (1st Cir. 1950); Lauderdale v. Smith, 186 F.Supp. 958 (E.D.Ark.1960).

tiffs' claim is two years, and the damages for which they may recover prior to the filing of the complaint are limited to those suffered from June 28, 1959.

### ABSENCE OF ANY MATERIAL ISSUE OF FACT

It is in the light of this limitation upon the period of time within which plaintiffs may recover for damages resulting from an alleged violation of Section 303 of the Act that we now turn to the second contention urged by the defendant in support of his motion for summary judgment—that, conceding that plaintiffs' claim is not entirely barred by the statute of limitations, the record shows an absence of any material issue of fact and defendant is under the applicable principles of substantive law entitled to judgment. As previously noted, this contention is based upon the pleadings, depositions, answers to interrogatories, and affidavits submitted to the Court and made a part of the record herein.

(A) *The Factual Situation:* Chester and Paul Railing were, during the period involved in this dispute, partners doing business under the name of "C & P Coal Company". Plaintiffs' coal mining facilities consisted of strip mining operations on leased property in Taylor and Barbour Counties and a tipple and processing plant near Flemington, in Taylor County. In paragraph six of the complaint, plaintiffs allege that during April of 1958 and thereafter, defendant United Mine Workers of America, through its officers, agents and members, "induced and encouraged" the employees of plaintiffs to engage in a concerted refusal in the course of their employment "to handle, process, receive, or otherwise work on coal * * * and the objects of the union were to force the plaintiffs to join the union or to cease doing business with other employers, or to cease using, selling, or otherwise handling the products of other employers." In addition to the aforementioned objectives, plaintiffs contend

that such "inducement" on the part of the defendant was for the purpose of forcing "other employers to recognize the union as the bargaining representative of their employees, and to force plaintiffs to recognize the union as the bargaining representative of plaintiffs' employees." It is further alleged that from April of 1958 to July 14, 1959, defendant induced the employees of other employers and other employers "to engage in a concerted refusal, in the course of their employment, to handle, transport, deliver, process, receive or otherwise work on any coal produced by the plaintiffs," the objects being the same as those enumerated in paragraph six of the complaint. The manner in which the alleged inducement on the part of the defendant was conducted is described by plaintiffs in their complaint as follows:

"* * * the union * * * caused high motorcades to be assembled and formed to roam the highways and roads in and around the vicinity of plaintiff's business, and the business of other employers, large mobs were assembled in the vicinity of plaintiff's business and on and about such business area and threatened, abused, intimidated and injured the employees of plaintiff to such an extent that such employees were unable to engage in their employment and plaintiff and employees were prevented from going on and about plaintiff's business area and from operating plaintiff's business * * * employees of plaintiff desiring to work were threatened, beaten, abused, fired upon and so intimidated that they were prevented from working and plaintiff's business and property were greatly damaged * * *. Also, other employers seeking to do business with plaintiff were prevented from doing so by such illegal activity on the part of the union."

Defendant, in its answer, denies the preceding allegations and, based upon the pleadings, interrogatories and the responses thereto, and the depositions

of plaintiffs, asserts that the undisputed facts demonstrate that the activities complained of were "primary activities" entitling it to judgment as a matter of law.

The facts, not in dispute in the record as presented, may be summarized as follows: In 1958, plaintiffs were running a nonunion mining operation consisting of a strip pit employing twenty to twenty five men, and a tipple employing seven or eight men. Approximately five miles separated these two operations. On the morning of April 3, 1958, Paul Railing arrived at the strip pit to find that the men there employed did not intend to work. Upon inquiry he learned that the "fellows have got union cards and don't want to go to work." Mr. Railing told the employees to thrash the problem out among themselves, but when only one worker made any move to begin work he sent the men home. Only C & P Coal Company employees were present on this date. The following Monday morning the workers returned to the strip pit. Thirty five or forty other men were also present on that date. These men stood outside the gate leading to the strip pit and though five or six of the employees apparently made a move to enter the premises, they were deterred from so doing by the threats of the other men. No work was performed at the pit that day. Thereafter, picket lines were set up approximately 2,000 feet from the stripping operation on what is known as Buck Run Road, and from April 3, 1958 to July 14, 1959 (when the National Labor Relations Board obtained an injunction prohibiting such activities), all operations ceased at the strip pit as well as the tipple. The pickets ranged in number from 50 to 150 and included most of the employees of C & P Coal Company. Plaintiffs attemped to haul coal from the strip pit to the tipple on one occasion following the initial setting up of the picket line, however, the pickets blocked the road and the truck was unable to pass. No further attempts were made to transport the coal. Nearly two weeks after the initial work stop-

page, officials of the defendant United Mine Workers contacted Chester Railing. A meeting was held at the C & P tipple with Eli Zivkovich, Harry Myers, Joe Gladski and Russell Mayles representing the defendant. The union representatives handed Chester Railing a standard United Mine Workers Contract and told him to sign it. Upon his refusal, he was told that he would either sign the contract or he "would never load another pound of coal." The meeting ended upon this note and no further attempt at negotiation was made between these union representatives and Chester Railing; shortly thereafter, a meeting between Paul Railing, Harry Myers and Eli Zivkovich followed similar lines and produced the same result.

C & P Coal Company sold, through its sales agent, coal other than that which it mined at its own operations. Although the company did not make a practice of buying outside coal, coal was purchased occasionally from several other producers when they had some left over from their own sales, but during the time the activities complained of were being conducted, no such outside coal was purchased.

The picket lines formed on Buck Run Road near the C & P tipple were conducted in a peaceful manner and there is no evidence of violence on the part of any individual except as noted below. These pickets maintained a constant vigil, excepting Sundays and holidays, until the issuance of the injunction on July 14, 1959. The only instances of actual violence occurred on November 16, 1958 and July 9, 1959. On these two occasions, large pieces of mining machinery belonging to C & P were dynamited and the identity of the guilty person, or persons, was never determined.

(B) *Burden of Proof:* In considering a motion for summary judgment, the moving party (in this case the defendant) has the burden of showing the absence of any genuine issue as to *all* the material facts involved in the asserted claim and made relevant by the applicable principles of substan-

tive law. Although the plaintiffs may have the burden of producing evidence upon a given issue in a trial of the case, on motion for summary judgment the defendant, as moving party, has the burden of producing evidence which negatives the opposing party's claims. 6 Moore, Federal Practice, Sec. 56.15(3) at 2343 (2d 1965); Stevens v. Howard D. Johnson Co., 181 F.2d 390 (4th Cir. 1950). In addition, in ruling on a motion for summary judgment the inferences of fact from the evidence offered must be drawn against the moving party and in favor of the party opposing the motion. It is with these principles as a guide that we must now determine whether the defendant in the present case has sustained his two-fold burden of showing that there is no issue of material fact and that he is entitled to judgment as a matter of law.

(C) *Applicable Substantive Principles:* Plaintiffs' complaint has alleged conduct on the part of the defendant which, if proved, would be in violation of Sec. 8(b) (4) (B) of the National Labor Relations Act.[6] Under this provision of the Act a labor organization is forbidden to (1) induce or encourage employees to engage in a strike or refusal to handle goods or perform any services, or (2) threaten, coerce, or restrain *any person* (including an employer) where an object of such conduct is either of the following:

(a) Forcing any person to cease dealing in the products or to cease doing business with any other person, or

(b) forcing any other employer to recognize or bargain with a labor organization as the representative of his employees unless such organization has been certified as the representative under the provisions of Section 159 of the Act.

As has been pointed out by the Supreme Court, Section 8(b) (4), properly construed, does not interfere with the ordinary strike, but is directed toward what is known as the secondary boycott "whose 'sanctions bear, not upon the employer who alone is a party to the dispute, but upon some third party who has no concern in it.' " Local 761, International Union of Electrical, Radio & Machine Workers, AFL–CIO v. National Labor Relations Board, 366 U.S. 667, 672, 81 S.Ct. 1285, 1289, 6 L.Ed.2d 592 (1961). This limitation upon the reach of the language used in Section 8(b) (4) is in "conformity with the dual congressional objectives of preserving the right of labor organizations to bring pressure to bear on offending employers in primary labor disputes and of shielding unoffending employers and others from pressures in controversies not their own." National Labor Relations Board v. Denver Bldg. Trades Council, 341 U.S. 675, 692, 71 S. Ct. 943, 953, 95 L.Ed. 1284 (1951). From these broad principles, applicable to cases such as the one with which we are concerned, we must now examine

---

6. The text of Section 8(b) (4), as relevant for the purposes of this decision, is as follows:

"It shall be an unfair labor practice for a labor organization or its agents * * * (4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is— * * * (B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees * * *."

the specific charges as they emerge from the complaint of the plaintiffs.

## INDUCEMENT OF PLAINTIFFS' EMPLOYEES

■ Plaintiffs allege in this complaint that defendant induced and encouraged the employees of C & P to engage in a refusal to "work on coal" at the plaintiffs' strip pit for the purpose of forcing the plaintiffs to cease doing business with other employers and to force other employers to recognize the union as the bargaining representative of their employees. The evidence most strongly relied upon by the defendant in its motion for summary judgment with respect to this alleged inducement of plaintiffs' employees shows (1) the bulk of the activity complained of consisted of picketing near the premises of the employer, and (2) plaintiffs' business with the other named employers was negligible.

If the facts as presented in the record showed simply an attempt to gain recognition of the defendant union as the bargaining agent for the employees of C & P with the incidental *effect* of a cessation of business with other employers, this Court would have little difficulty in granting defendant's motion for summary judgment, See United Steelworkers of America AFL–CIO v. National Labor Relations Board, 376 U.S. 492, 84 S.Ct. 899, 11 L.Ed.2d 863 (1964). However, the record presents a picture, admittedly rather sketchy in certain respects, which indicates that the defendant's activities were not confined solely to the premises of the plaintiffs' operations, but extended to the mining operations of several companies in the area as well as to several trucking concerns. Such a situation presents, especially at this stage in the proceedings, a formidable problem requiring distinctions "more nice than obvious" with respect to the nature and intent of acts performed by or in behalf of the defendant union. Defendant places great emphasis upon the testimony of Chester Railing attributing the refusal of his employees to work simply to the picket line set up on Buck Run Road. Indeed, the evidence does indicate that the refusal to work was primarily the result of this picket line,[7] and if it were shown by the evidence that the dispute in which the union was engaged was a primary dispute with the plaintiffs, such would require this Court to hold, at least with respect to the charge of inducement of plaintiffs' employees, that defendant was in fact entitled to judgment as a matter of law. Bedford-Nugent Corporation v. Chauffeurs, Teamsters and Helpers, Local Union No. 215, 358 F.2d 21 (7th Cir. 1966); National Woodwork Manufacturers Association v. National Labor Relations Board, 386 U.S. 612, 626–628, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967). However, though it is apparent that the activity inducing the conduct complained of occurred near the premises of the plaintiffs, the crucial question concerning the characterization of this dispute as "primary" or "secondary" remains unanswered. To resolve this issue, we are required to examine the relationship of the defendant union to the other employers against whom the activity, with respect to plaintiffs' employees, was alleged to have been directed.[8] A careful

---

**7.** That the inducement complained of did not occur solely at the picket site on Buck Run Road is indicated by the following response to an interrogatory propounded by the defendant:

"The places were usually around and upon the plaintiffs' tipples and between tipples and strip jobs. However, such threats, abuse, and intimidation (especially to those who had not already knuckled under to defendant's activities) occurred whenever and wherever the defendant's mob come (sic) into contact with such employees."

**8.** The names of the employers with whom plaintiffs were allegedly forced to cease doing business were given as follows: P & J Coal Company; Layman Coal Company; Mildred Coal Company; George Lee Coal Company; Blue Ridge Coal Company; Marra Brothers Coal Company; Kinty Trucking Co.; Kittle Trucking Co.; Dorothy Coal Co.; Gates Trucking Co.; and M & T Coal Co.

examination of the record produces only the most vague outlines of the conduct of the defendant with respect to the other employers in the vicinity and the nature of the dispute among these parties is dealt with only as an aside. The defendant would argue that this absence of evidence is remedied by the showing that the plaintiffs did not in fact conduct business with the other named employers and thus it could not be said that activities inducing plaintiffs' employees to refuse to work had the effect complained of. However, it is undisputed that plaintiffs did purchase coal from other operators and, although the company did not make a practice of buying outside coal, evidence is in the record from which it could be inferred that a business relationship existed between these other coal operators and the plaintiffs. While this Court may not speculate upon the nature and extent of this relationship, we may draw inferences most favorable to the party against whom the motion is made. We accordingly find that plaintiffs have established, for the purposes of this motion, that a business relationship existed between C & P Coal Company and a number of other operators in the area at which the inducement of plaintiffs' employees could have been directed. We are thus once again faced with the question of determining whether or not the activity complained of was primary or secondary and, as mentioned above, the determination of such an issue requires evidence establishing the nature of the relationship existing between the union and the other employers. Evidence of this nature is conspicuously absent from the record. While such a failure of proof would, in the case of a trial on the merits, prove fatal to the plaintiffs' claim, upon a motion for summary judgment, wherein the moving party has the burden of producing evidence negating the opposing party's claim, it is the defendant who must bear the consequences of such failure. Accordingly, we hold that, with regard to the issue of the inducement of plaintiffs' employees for the purpose of forcing plaintiffs to cease doing business with other employers and forcing other employers to recognize the union as the bargaining agent of their employees, the defendant has failed to sustain its burden of showing that there is no genuine issue of fact and is not, on the basis of the present state of the record, entitled to summary judgment.

## INDUCEMENT OF EMPLOYEES OF OTHER EMPLOYERS

The plaintiffs have alleged in paragraph seven of their complaint that the defendant, through its members, induced the employees of other employers "to engage in a concerted refusal, in the course of their employment, to handle, transport, deliver, process, receive or otherwise work on any coal produced by the plaintiff," the object thereof being to force their employers to cease doing business with plaintiffs and to force plaintiffs to recognize the defendant union as the bargaining representative of their employees. As has already been pointed out in this opinion, the evidence of record with respect to the defendant's activities in relation to the operations of employers other than the plaintiffs is slight if not non-existent. There is some indication in the record that the employees of the Kittle and Kinty Trucking Companies were persuaded to refuse to transport the coal from plaintiffs' strip pit to the tipple and mention is made, in passing, of a picket line which had formed at "Harry Kaufman's mine." Nevertheless, other than the allegations in the complaint and the answers to the defendant's interrogatories which in substance are in agreement with the complaint, the record is silent. The defendant has had the burden of establishing, on the basis of the pleadings, interrogatories, depositions and affidavits, the absence of any genuine issue of material fact which under the applicable substantive law would entitle it to judgment as a matter of law. As mentioned previously, though the plaintiffs may have the trial burden, on motion for summary judgment the defendant, as the moving party, has the burden of coming forward with credible evidence which establishes the absence

of any genuine issue of fact. Suffice it to say, this Court finds that the defendant has failed to sustain its burden with respect to the allegations concerning the inducement of the employees of other employers and that its motion for summary judgment in this regard must, accordingly, be denied.

## INDUCEMENT OF OTHER EMPLOYERS

The plaintiffs have alleged in paragraph seven of their complaint that the defendant union "induced * * * other employers to engage in a * * * refusal * * * to * * * work on any coal produced by the plaintiffs," the object being to force plaintiffs to recognize defendant union as the bargaining representative of its employees. Prior to the 1959 amendments it had been held that threats made to the *employer* instead of his employees were not unfair labor practices under Section 8(b) (4) of the Act. See National Labor Relations Board v. International Union of Brewery Workers, 272 F.2d 817 (10th Cir. 1959). However, under the 1959 amendments such conduct, for the purpose of the proscribed objectives, is made an unfair labor practice when it amounts to conduct which "threaten[s], coerce[s], or restrain[s] any person." It is apparent that the inducement of other employers charged in plaintiffs' complaint was meant to refer to conduct which threatened, coerced or restrained other employers. If only inducement of employers is shown, a claim under Section 8(b) (4) (ii) must fail, for only conduct which amounts to threats, coercion, or restraint is made actionable by that section. National Labor Relations Board v. Servette, Inc., 377 U. S. 46, 53–54, 84 S.Ct. 1098, 12 L.Ed.2d 121 (1964). However, for the purposes of this motion for summary judgment we shall consider the complaint as charging conduct which, if proved, would be an unfair labor practice under Section 8(b) (4) of the Act. See 6 Moore, Federal Practice, Section 56.10 (2d Ed. 1966). Viewing the complaint in this light and in conjunction with the absence of evidence concerning the conduct of the defendant with respect to the "other employers" mentioned earlier, we hold that the defendant has failed to sustain its burden of showing the absence of a genuine issue of material fact in regard to the charge of coercion of other employers and, therefore, the motion for summary judgment in this respect must be denied.

## SUMMARY

To summarize, it is the findings and conclusions of the Court:

(1) That where the statute of limitations is pleaded in an action for damages for the violation of the provisions of Section 303 of the Labor-Management Relations Act of 1947 (29 U.S.C.A. § 187), originally brought in the District Court of the United States for the Eastern District of Kentucky and later transferred by that court to the District Court of the United States for the Northern District of West Virginia under 28 U.S. C.A. § 1404(a), for the convenience of the parties and witnesses and in the interest of justice, and the Act itself fails to provide a limitation for the bringing of such action, the transferee district court must look to the law of the state of Kentucky, including that state's "borrowing statute," to determine the statute of limitations applicable to the cause of action sued upon.

(2) That while the limitation period itself is controlled by state law, the determination of the time of the "accrual" of the cause of action for the violation of a federally-protected right and the time of the commencement of the running of the state statute with reference thereto are governed by federal decisional law.

(3) That where an action was originally brought in Kentucky and transferred to West Virginia under the doctrine of *forum non conveniens* and it is shown that the cause of action declared upon arose in West Virginia and the period of limitations applicable thereto is shorter in West Virginia than in Kentucky, West Virginia law must be applied by virtue of the force and effect of Kentucky's "borrowing statute" (KRS 413.320).

(4) That the two-year limitation prescribed by West Virginia Code 55–2–12 is applicable to the cause of action declared upon, and any grievance committed or damage sustained more than two years prior to the institution of this action on June 28, 1961 is barred by such statute.

(5) That the defendant has failed to carry its burden of showing a lack of any genuine issue of material fact with respect (a) to the issue of the unlawful and wrongful "inducement" of plaintiffs' employees; (b) to the issue of the unlawful and wrongful "inducement" of the employees of other employers, and (c) to the issue of the unlawful and wrongful "inducement" of other employers.

Defendant will accordingly have summary judgment against any grievance committed and damage sustained more than two years prior to the institution of this action on June 28, 1961, but defendant's motion in all other respects is denied.

An appropriate order, making this opinion a part of the record, will be submitted within thirty (30) days from the date hereof.