Chester **RAILING** and **Paul Railing,**
**d/b/a C & P Coal Company,**
**Appellants,**

v.

**UNITED MINE WORKERS OF AMER-**
**ICA, Appellee.**

**No. 12723.**

United States Court of Appeals,
Fourth Circuit.

Argued March 6, 1969.

Decided July 17, 1970.

John J. Tribell, Middlesboro, Ky.
(William S. Tribell, Middlesboro Ky.,
and William G. Johnson, Clarksburg, W.
Va., on the brief), for appellants.

M. E. Boiarsky, Charleston, W. Va.,
Edward L. Carey, Harrison Combs, Wil-
lard P. Owens, Washington, D. C., and
Michael Tomasky, Morgantown, W. Va.,
on the brief, for appellee.

Before BOREMAN, CRAVEN and
BUTZNER, Circuit Judges.

CRAVEN, Circuit Judge.

Chester and Paul Railing began this
action on June 28, 1961, for injuries to
their business and property alleged to
have been caused by unfair labor prac-
tices of the officers, agents, representa-
tives and members of the United Mine
Workers of America.[1] Jurisdiction rests
upon 29 U.S.C. § 187 (1964).

---

1. The opinion of the district court is reported. Railing v. United Mine Workers, 276 F.Supp.
238 (N.D.W.Va.1967).

The Railings conducted a nonunion coal strip-mining operation and coal tipple at Berry Run, West Virginia. In April of 1958, Railings' employees, allegedly instigated by the Union, struck and picketed these operations. The Union's purpose was said to be: (1) to force the Railings to recognize the Union as exclusive bargaining representative, and (2) to force the Railings to cease doing business with other employers or to cease using, selling or otherwise handling the products of other employers, thereby forcing these other employers to recognize the Union as the bargaining representative of their employees. Additionally, the Railings allege that UMW maliciously destroyed specific items of equipment and property[2] and induced employees of other employers to engage in a concerted refusal to handle or otherwise work on any coal produced by Railing. On July 14, 1959, there was a complete cessation of all strike activity and picketing pursuant to an injunction issued by the National Labor Relations Board; however, the Railings did not institute this action until June 28, 1961, one year and approximately eleven and one-half months after such cessation.

The Railings appeal from the partial grant of UMW's motion for summary judgment as it related to the application of the two-year statute of limitations prescribed by W.Va.Code, ch. 55, art. 2, § 12 (Michie 1966). The district court held that the statute of limitations began to run on the alleged illegal activities of UMW from each day of their occurrence and not from the time when all such activities ceased.[3] The result is to bar many claims that would be viable if the statute of limitations were adjudged to run from the date of cessation of illegal activity.

In its discussion of the issue now before us, the district court addressed itself to two basic questions: (1) what period of limitation was to be applied, and (2) when the cause of action being sued upon accrued and when the period of limitations began to run.

Section 303 of the Labor Management Relations Act contains no statute of limitations. The district court referred to state law to determine the pertinent period of limitation to be applied. Plaintiffs originally instituted this action in the District Court for the Eastern District of Kentucky, but the action was transferred to the District Court for the Northern District of West Virginia upon motion of UMW. The court below, the transferee district court, determined that it must look to the law of the State of Kentucky, the state from which the transfer was made, including Kentucky's "borrowing statute," KRS 413.060, to determine the statute of limitations applicable to the cause of action sued upon. See Cope v. Anderson, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947). The Kentucky statute required the application of the West Virginia two-year period of limitation, since it was shorter than the period of limitation prescribed by Kentucky. The Railings do not challenge the correctness of this ruling.

█ It is the district court's disposition of the problem relating to accrual of the cause of action that is the subject of appeal. In treating this issue of accrual the district court correctly determined that federal and not state law must be applied. Rawlings v. Ray, 312 U.S. 96, 61 S.Ct. 473, 85 L.Ed. 605 (1941). This is so even though the period of limitation is "borrowed" from the appropriate state. Cope v. Anderson, 331 U.S. 461, 67 S.Ct. 1340, 91 L. Ed. 1602 (1947). Although it is clear that federal law is to be applied, it is not so clear what that law may be. Since neither the statute nor the report-

---

2. Railing requests compensatory and punitive damages for these common-law torts pursuant to the court's pendent jurisdiction.

3. This decision was determined and declared by the district court to be a final judgment under the provisions of Rule 54(b) of the Federal Rules of Civil Procedure.

ed decisions determine when a cause of action accrues under Section 303, we are faced, as was the court below, with the necessity of fashioning a rule of decision to be applied in determining when such cause of action "accrues."

In undertaking to fashion such a rule we have examined cases involving private causes of action arising under the federal antitrust laws. In such cases as Highland Supply Corp. v. Reynolds Metals Co., 327 F.2d 725 (8th Cir. 1964); Crummer Co. v. Du Pont, 223 F.2d 238 (5th Cir. 1955); and Delta Theaters Inc. v. Paramount Pictures, Inc., 158 F. Supp. 644 (E.D.La.1958), it has been held that where private causes of action under the antitrust laws are based upon continuous invasions of one's rights, the causes accrue from day to day as the injured party's rights are invaded and damages result. The Union urges us to adopt the principle of the antitrust cases here.

On the other hand, the Railings contend that under the facts of the instant case, where the same illegal activity continued on a daily basis over a definite period, a cause of action should not be held to accrue and the limitation period should not commence to run until cessation of the acts complained of;[4] that it would be impossible to compute damages on a day-to-day basis, and that the decision of the district court requires of a prospective plaintiff "an attempt at prophecy or projecting into the future how long the alleged illegal activities would continue and what their future effect would be;" that it is unfair to put the injured party in the difficult position of having to protect himself from the running of the statute of limitations while the illegal activities continue.

The district court, in holding that the cause of action accrued from day to day, relied directly on the reasoning of the court in Delta Theaters, Inc. v. Paramount Pictures, Inc., 158 F.Supp. 644

(E.D.La.1958). That case involved a suit under the Clayton Act for damages resulting from conspiracy to destroy competition. The conspiracy had allegedly been going on for ten years before the suit was filed. The plaintiff argued that because the actions of the defendants constituted a continuing conspiracy for a single purpose, the applicable statute of limitations should not be construed to run against the plaintiff's single cause of action as long as the conspiracy continued. As the court viewed plaintiff's argument, if the conspiracy constituted a single cause of action, the statute of limitations would either have run from the first "impact" of the conspiracy, in which case the cause of action would have been barred some nine years before, or from the last, which would mean it had not yet accrued. The plaintiff sought to avoid this result by arguing that it should be able to sue on any part of its claim at any time during the conspiracy, but that defendant should not be able to take advantage of the statute until the conspiracy had ceased. The court rejected plaintiff's position, stating that the conceptual difficulties in attempting to split the type of claim involved were not a sufficient reason for refusing to give effect to the principles underlying the statutes of limitation. "The lapse of time obscures the facts of a continuing conspiracy just as much as those of an intermittent one." 158 F.Supp. at 648.

On its facts, *Delta Theaters* does not reach an unreasonable result. Conspiracy, at best, is an ephemeral concept, and the conspiracy in *Delta Theaters* had allegedly continued over a decade. Certainly the prospect of trying to determine correctly facts spread out over a decade is formidable enough to give pause to any court. The "lapse of time —fading memory—stale claim" arguments underpinning every statute of limitations were, indeed, sufficient reasons for the result the court reached.

---

4. As one court has colorfully phrased a similar contention: a cause of action does not accrue until "the wicked cease from troubling and the weary are at rest." Crummer Co. v. Du Pont, 223 F.2d 238, 247 (5th Cir. 1955).

But whatever justification existed for applying the day-to-day accrual principle in *Delta Theaters*, we think it does not apply here. The Railings are not charging UMW with conspiracy, but with the virtual destruction of their business through illegal labor activities, including acts of violence. Moreover, the alleged activities continued for only 16 months, from April 1958 to July 14, 1959, and the action was commenced less than two years after the illegal activities ceased. As the Railings point out, the total eventual damage to the business could not be ascertained after each day of illegal activity. Even if all the illegal activity could be broken down into severable, day-to-day "acts," the sum of the damage directly attributable to those acts would likely be less than the total damage resulting from the combination of the acts over 16 months. Thus, for instance, illegal activity during the first month may have caused ascertainable damage at that time, but it may have also caused cumulative damage in the sixteenth month by operating in concert with other illegal activities.

When one views the continuing cause or causes of action in this light, it becomes clear that application of a day-to-day accrual principle is inapposite. Not only would the total damage have been unascertainable before the illegal strike ceased, but also adequate inclusion of all damages resulting from individual, day-to-day acts would have been difficult and cumbersome. To fully protect themselves, plaintiffs would have been forced either to move to amend their complaint frequently to include newly accrued damages, or to speculate as to the total damages that would eventually result from the strike, or both. It would require an unusual degree of prescience to determine when the strike would end and what damage would ultimately result.

Since this is a tort case, it seems to us more sensible to refer to rules of limitation for torts than for antitrust:

If the continuing nature of the tort and injury is such that damages cannot be determined until cessation of the wrong, the right of action is deemed as continuous as the tort on which it is based so that it accrues at, and limitations begin to run from, the last date rather than from the first date of the wrong, or, as otherwise expressed, limitations do not apply to such a tort so long as it subsists.

54 C.J.S. Limitations of Actions § 169, at p. 128 (1948).

▆▆▆ Under the circumstances present here, we think the rule most appropriate is that the cause of action accrues on the last date of continuing illegal conduct for purposes of application of a state statute of limitations, but that for separate injury for which damages are earlier ascertainable suit *may* be brought at the date of ascertainment. In other words, the victim of the illegal activity should be entitled to bring suit as soon as he can do so, but should not be required to bring suit until the illegal activity has ceased. Cf., *e. g.*, Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); Ricciuti v. Voltarc Tubes, Inc., 277 F.2d 809 (2d Cir. 1960); Fowkes v. Pennsylvania R. R. Co., 264 F.2d 397 (3rd Cir. 1959); Essex Wire Corp. v. M. H. Hilt Co., 263 F.2d 599 (7th Cir. 1959); Reynolds Metals Co. v. Yturbide, 258 F.2d 321 (9th Cir. 1958), cert. denied, 358 U.S. 840, 79 S.Ct. 66, 3 L.Ed.2d 76 (1958); Goodall Co. v. Sartin, 141 F.2d 427 (6th Cir. 1944), cert. denied, 323 U.S. 709, 65 S. Ct. 34, 89 L.Ed. 571 (1944). But see, *e. g.*, R. J. Reynolds Tobacco Co. v. Hudson, 314 F.2d 776 (5th Cir. 1963); Hilton v. Duke Power Co., 254 F.2d 118 (4th Cir. 1958), rehearing denied, 255 F.2d 840 (1958). Under this rule the West Virginia statute of limitations did not begin to run until the UMW finally ceased its illegal strike activities. We hold the district court erred in ruling that the statute of limitations began to run on the day each unfair labor practice occurred.

The judgment will be reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

BOREMAN, Circuit Judge (dissenting):

It is with some sense of disappointment that I am prompted to file this statement of dissent as to the majority's interpretation and application of the West Virginia statute of limitations.

In the complaint the Railing partnership (hereinafter called plaintiff) invoked the jurisdiction of the court by virtue of § 303 of the Labor Management Relations Act (29 U.S.C. § 187). The plaintiff demanded judgment for damages in separate amounts: (1) for the destruction of plaintiff's business and the loss of profits therefrom; (2) to plaintiff's physical property, machinery and equipment; (3) for sums expended by plaintiff preparing to resume business operations; and (4) for punitive damages. As the district court noted, there are two aspects to the complaint. In addition to the § 303 claim, the second aspect "of the action seeks recovery of both compensatory and punitive damages for non-peaceful, violent, coercive, and conspiratorial activities and conduct by the union of such a wilful and wanton nature as to give rise to a common-law tort." The court held that, while federal jurisdiction of the § 303 claim was fixed by statute, requisite diversity of citizenship was lacking to invoke jurisdiction of the common-law tort claim although, under the doctrine of pendent jurisdiction the court *might* take jurisdiction and adjudicate the tort claim as well. Citing United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the district court held that the plaintiff had no *right* to invoke the doctrine of pendent jurisdiction although the court might apply it in the exercise of its *sound discretion.* The court declined to reach a determination on this point until after submission of plaintiff's proof. It was in this posture and context that the court granted defendant's motion for summary judgment as it related to the application of the West Virginia two-year statute of limitations.

The majority takes the view that the pertinent West Virginia statute of limitations did not begin to run until the date of the cessation of strike and picketing activities (July 14, 1959), citing as authority 54 C.J.S. Limitations of Actions § 169, at p. 128 (1948); but the majority opinion fails to note that text's further comment:

"Where a continuing tort involves separate and successive injuries, the action accrues at, and limitations begin to run as to each injury from, the date thereof, and *there is not only a cause of action for the original wrong, arising when the wrong is committed, but separate and successive causes of action for the consequential damages arise as and when such damages are from time to time sustained*; and, therefore, as long as the cause of the injury exists and the damages continue to occur, plaintiff is not barred of a recovery for such damages as have accrued within the statutory period before the action. Thus an action may lie for an injury recurring within the prescriptive period, even though the first tortious act antedated such period, and a cause of action based solely on the original wrong may be barred; but the recovery is limited to such damages as accrued within the statutory period before the action." (Emphasis supplied.) § 169, at pp. 128–129.

The district court concluded "the most appropriate rule" in cases concerned with the problem of accrual of a cause of action, involving numerous acts resulting in a continuous invasion of a protected interest, is that applied in Delta Theaters, Inc. v. Paramount Pictures, Inc., 158 F.Supp. 644, 648 (E.D.La. 1958), which, although recognizing "con-

ceptual difficulties in attempting to split this type of claim," adopted the Third Circuit's rule in Bluefields S. S. Co. v. United Fruit Co., 243 F. 1, 20 (3 Cir. 1917), as follows:

> " 'The statute began to run when the cause of action arose, and the cause of action arose when the damage occurred. Then action might have been brought.'

and, further,

> "In the case of successive damages suffered day by day * * * the statute begins to run on each day's damage as it occurs. When suit is brought, the plaintiff may recover only for damages inflicted during the period of limitations immediately preceding the filing of the complaint."

The court below (276 F.Supp. at 243, n. 3) appropriately cited Highland Supply Corp. v. Reynolds Metals Co., 327 F. 2d 725 (8 Cir. 1964); Streiffer v. Seafarers Sea Chest Corporation, 162 F. Supp. 602 (E.D.La.1958); and Radio Corporation of America v. Rauland Corp., 186 F.Supp. 704 (N.D.Ill.1956). While *Delta Theaters, supra,* involved a cause of action based upon a conspiracy violative of the Clayton Act's § 4 (15 U. S.C. § 15), the court below regarded that analysis "particularly appropriate in an action based on Section 303 of the Act for damages to plaintiff's 'business or property' " since, as the court observed, "determining the actual cause, and the date thereof, of a particular loss for the purpose of establishing the accrual date of a cause of action would normally be impossible except in simple cases where the 'acts are individually related to, and more or less contemporaneous with, the resulting damage.' "

Since the phrase "shall have accrued" is critical in the West Virginia statute of limitations, accrual of a cause of action under West Virginia decisional law becomes a pertinent inquiry.

In Pickens v. Coal River Boom & Timber Company, 66 W.Va. 10, 65 S.E. 865 (1909), the West Virginia Supreme Court held:

> "When the operation of a boom causes deposit of sand in a stream, thereby injuring the grinding capacity of a mill, the mill owner may recover in actions from time to time as damage and loss occur, and is not compelled to sue for present and prospective damage in one suit, and the statute of limitations begins to run, not from the construction of the boom, but when the damage occurs in time."

Implementation of *Pickens* came in Guyan Motors v. Williams, 133 W.Va. 630, 634, 57 S.E.2d 529 (1950), where the West Virginia Court recognized that a right of action accrues to a landowner deprived of a lateral support when damage results from a defendant's act and not when the act takes place if that act does not then damage the land in question.

In Harrison v. McOwen, 126 W.Va. 933, 938, 30 S.E.2d 740, 742, the West Virginia Supreme Court, recognizing the validity of its rule in *Pickens*, stated "it is perfectly clear that the result of the alleged acts of the defendant did not happen at the actual time of the blast, but * * * when the alleged slide took place. Then the plaintiff owned this land alleged to have been damaged."

The defendant's motion for summary judgment was bottomed upon the complaint, pleadings, interrogatories propounded to the plaintiff by the defendant and plaintiff's responses thereto, as well as depositions of the Railing brothers, Chester and Paul.

Deponent, Chester Railing, testified that the plaintiff's operation had no coal orders or contracts; that plaintiff was dependent for coal orders upon Pursglove Coal Company, its broker, and that it was only when Pursglove called him daily that he knew what the orders were; that plaintiff had no price con-

tract with Pursglove and that he and the broker "would always keep haggling about the price"; that *plaintiff's losses would go from day to day* because of the way in which the plaintiff's operation shipped and sold its coal.

This testimony is contrary to plaintiff's contention that the alleged illegal activity resulted "in irrevocable loss of coal orders and contracts." Even if there had been contracts (and Chester Railing said there were none), plaintiff's argument that "some coal orders and contracts began and ended at one time and other orders and other contracts began and ended on other dates" is consistent with Railing's testimony that losses would go from "day to day" because of the way plaintiff shipped and sold its coal. If, as admitted, losses occurred on a day-to-day basis, there was no necessity for plaintiff to make an "attempt at prophecy or projecting into the future how long the alleged illegal activities would continue." An instant remedy was available when a right of action accrued.

Furthermore, Chester Railing testified that specific items of mining machinery were dynamited and destroyed on the mine property. He fixed the dates of the occurrences. On the night of November 16, 1958, two "P & H Shovels" were destroyed and an "87 Lorraine" shovel was dynamited on July 9, 1959. It is common knowledge in the coal industry and in the areas where coal is mined that stripping shovels are large and expensive items of production equipment. Damages for the destruction of this equipment are sought by plaintiff. Mr. Railing knew of the losses almost immediately after they occurred and it would be senseless to hold that the statute of limitations would not begin to operate as to such losses until the alleged unlawful activities had ceased.

I would affirm that portion of the judgment below which relates to and applies the two-year statute of limitations.